416 So.2d 1250 (1982)
In the Interest OF J.L.P., a Child.
No. 81-1033.
District Court of Appeal of Florida, Fourth District.
July 21, 1982.
*1251 Robert A. Bertisch and Linda S. Goodwin of Legal Aid Society of Palm Beach County, Inc., West Palm Beach, for appellant.
Mark M. Bradfield, West Palm Beach, for appellee Dept. of Health & Rehabilitative Services.
GLICKSTEIN, Judge.
Appellant, the natural mother of the minor child in this case, seeks reversal of a final order committing her child to the custody of the Department of Health and Rehabilitative Services, appellee, for subsequent adoption. We affirm.
The trial judge, having heard the testimony of several witnesses at the permanent commitment hearing held in April of 1981, made numerous findings, including:
1. [J.L.P.], a black male child, was born on December 11, 1979.
2. The subject child is within the jurisdiction of this Court, being found, living or domiciled, within Palm Beach County, Florida.
... .
5. The subject child was detained by the Department of Health and Rehabilitative Services on December 12, 1979, and temporary custody was granted to the Department resulting from the mother's having no means of support, questionable housing arrangements, and a past history of alleged child abuse. The child has continuously resided in foster care since that time.
6. The natural mother is trainably retarded and only has the capability of learning simple, repetitive tasks, and performing them only under supervision. Her level of incompetence assures inadequate parenting skills. She would be unable to cope with emergencies, plan for the future, attend to schooling, deal with others on behalf of the child, or even plan for meals. Her attitude is essentially hostile, combative, antagonistic, and irritable. Since December 12, 1979, the mother has continued to reside in inadequate housing, primarily a men's rooming house which will not take children. The rooming house smells of urine and marijuana, and the rooms are all single rooms with a long dark hallway leading to communal bathrooms. The bathrooms are too filthy for use. The window is covered with a blanket, and the only cooking arrangements are a hot plate which the mother borrowed from one of the other tenants. Washing is done out of a pail, and the refrigerator did not work because the father had "jugged a hole in it."
7. Both the father and mother were before the Court on June 25, 1980, and the father was ordered to contribute $25.00 per week toward the child's maintenance and support which he has not done. The father has been steadily employed and has been financially able to contribute to the support of the child while the child has been in foster care. The father has failed to submit to psychological evaluation by the court psychologist despite having been ordered to do so. Neither the father nor the mother have done anything toward obtaining suitable housing since having been ordered to do so by the Court on June 25, 1980. Neither parent has demonstrated a purpose to make the changes necessary for the placement of the child in their home.
8. The mother attended school at Palm Beach Habilitation Center, and in three weeks she had four absences. In the next two weeks, she had four absences. She has failed to obtain or keep a job, and her only work history is working four days at a restaurant.
9. The mother is in the lowest one-half of one percent of the general population with respect to intellectual capability, and she is too impatient and irresponsible to cope with the demands of raising a child. She is unable *1252 to think in terms of the child's welfare.
In this case the trial court determined the evidence established neglect. Appellant contends neglect cannot be prospective, and because she never had custody of the child, she could not have legally neglected him. We disagree. We also think abuse under section 39.01(2), Florida Statutes (Supp. 1980),[1] may be established prospectively.
Section 39.41(1)(f) 1 a, Florida Statutes (Supp. 1980), provides:
When any child is adjudicated by a court to be dependent, the court having jurisdiction of the child shall have the power, by order, to:
... .
[p]ermanently commit the child ... [i]f the court finds that the parent has abandoned, abused, or neglected the child.
Section 39.01(27), Florida Statutes (Supp. 1980), defines neglect as
when a parent or other legal custodian, though financially able, deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired.
Under the statutes, we hold that in order to sustain a final order of permanent commitment because of neglect or abuse, there must be clear and convincing evidence[2] that the child has been or will be neglected or abused.[3] We do so for a number of reasons. First, section 39.001(3), Florida Statutes (1979), expresses the Legislature's intent that the Florida Juvenile Justice Act be liberally construed so as to effectuate its purpose. Section 39.001(2)(b), Florida Statutes (1979), states that one of those purposes is "to assure to all children brought to the attention of the courts ..., the care, guidance, and control ... which will best serve the moral, emotional, mental, and physical welfare of the child." Second, parental rights are "subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail." In Re Camm, 294 So.2d 318, 320 (Fla. 1974). Third, in construing legislation, we must avoid any construction that would produce an unreasonable, absurd, or ridiculous consequence. McLellan v. State Farm Mutual Automobile Insurance Co., 366 So.2d 811 (Fla. 4th DCA 1979).
We are not insensitive to appellant's plight, which is woeful, and her circumstances are a stark reminder that life can be wretched in this country at this time for the poverty stricken. Furthermore, as this court said in Wright v. State, 409 So.2d 1183, 1184 (Fla. 4th DCA 1982),
The purpose of the phrase "financially able" in subsection (27) is to ensure that financially disadvantaged parents may not be divested of their children simply because they are poor. It does not, however, constitute a license for child abuse for either rich or poor. We need not draw that fine line which the circumstances of some future case will require *1253 of a court confronted with a deprivation of necessary food, clothing, shelter or medical treatment. The term "financially able" rather clearly applies in that situation and poverty, under appropriate circumstances, may be found to constitute a bar to a finding of dependency.
Disregarding appellant's poverty, her limited mental capacity and emotional makeup standing alone certainly would produce a hopeless environment for her child. The uncontroverted opinion of the clinical psychologist who testified was that if the child were left alone with appellant, he would be subject to a considerable risk of abuse because of appellant's inability to think in terms of the child's welfare. The evidence supports the expert's conclusion. Unmarried, appellant was pregnant again at the time of the final hearing. Her profane outburst at the hearing plainly evinced her combativeness and impatience. Her sexual promiscuity and apparent indifference to some economic rehabilitation are unquestionably the result of her personal limitations and squalid conditions. The trial judge gave appellant ten months to establish an environment fit for the child, free of neglect and abuse. The evidence is clear and convincing that she is simply unable to do so because of her own shortcomings.
Our sympathy for the mother cannot blind us to the overriding concern for the welfare of the child. We cannot help the one and shall not harm the other. As the trial court pointedly observed in his final order, placing the boy with his mother will assure mistreatment. The Legislature clearly did not intend to have a child suffer such an experience before a trial court could act. Because of the clear and convincing evidence that neglect and abuse will occur if the child is placed in the care of his mother, we affirm.
ANSTEAD and HERSEY, JJ., concur.
NOTES
[1] Section 39.01(2), Florida Statutes (Supp. 1980), defines abuse as

any willful act that results in any physical, mental, or sexual injury that causes or is likely to cause the child's physical, mental, or emotional health to be significantly impaired.
[2] Santosky v. Kramer, ___ U.S. ___, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and Torres v. Van Eepoel, 98 So.2d 735 (Fla. 1957), make clear that before a State may sever completely and irrevocably the rights of parents in their natural child, due process requires that the State support its allegations by clear and convincing evidence.
[3] In contrast, the third ground for commitment, i.e., abandonment may not be considered prospectively in view of the language of section 39.01(1), Florida Statutes (Supp. 1980), which provides:

"Abandoned" means a situation in which a parent who, while being able, makes no provision for the child's support and makes no effort to communicate with the child for a period of 6 months or longer. If a parent's efforts to support and communicate with the child during such a 6-month period are, in the opinion of the court, only marginal efforts that do not evince a settled purpose to assume all parental duties, the court may declare the child to be abandoned.