466 So.2d 1156 (1985)
In the Interest of A.D.J. and D.L.J.
No. AV-422.
District Court of Appeal of Florida, First District.
March 28, 1985.
*1158 Daniel A. Smith, of Coxe, Schemer & Smith, Jacksonville, for appellants.
James A. Peters, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
This appeal is from a final judgment adjudicating A.D.J., a five-year-old girl, and D.L.J., a seven-year-old girl, dependent children and permanently committing them to the Department of Health and Rehabilitative Services (HRS) for adoption. Appellant, the children's father, raises three issues: (1) The trial court erred in taking judicial notice of prior dependency proceedings in which the father was not represented by counsel; (2) The court erred in admitting certain hearsay statements and reports of non-testifying witnesses; and (3) The trial court erred in ordering permanent commitment because the record lacks clear and convincing evidence that the father was guilty of abuse, abandonment, or neglect and that permanent commitment is in the best interests of the children. We reverse.
On March 5, 1982, HRS filed in the Duval County Circuit Court (cases 82-211-CJA and 82-211-CJB) two petitions for dependency to obtain custody of A.D.J. and D.L.J. Each petition specifically alleged that the father "has abused said child by commiting a willful act that has resulted in physical, mental, or sexual injury" and that the mother has neglected each child. The petitions also alleged that the father had "fondled" D.L.J. At the initial hearing on the petitions held March 17, 1982, the court explained the parents' right to have counsel appointed to advise and represent them if they could not afford to hire a lawyer. Both waived this right. The court then explained to them that they could admit the allegations of the petitions, deny the allegations, or neither admit nor deny them but agree to relinquish jurisdiction of the children to the court. The record reflects that the mother stated the children "should be a ward to the court" and that the father never chose any one of the three alternatives. On March 19, 1982, the court entered *1159 an order adjudicating dependency and committing the children to the temporary custody of HRS on the ground that the "parents stipulated as to dependency of child."
On April 8, 1982, the parents entered into a performance agreement in accordance with section 409.168, Florida Statutes (1981). Among other things, the agreement required that both parents receive counseling and, by September 1982, provide HRS with a statement from their therapists certifying parental fitness. Between April and December 1982, the parents underwent various counseling sessions pursuant to the performance agreement, and their status was periodically reviewed by the court. The record does not reflect that they provided a statement of parental fitness from their therapists, as required by the agreement. On December 1, 1982, the court ordered HRS to commence permanent commitment proceedings. The mother agreed to permanent commitment, but the father objected. The court, finding the father indigent, appointed him an attorney.
On April 21, 1983, HRS filed petitions for permanent commitment, alleging that each child had been adjudicated dependent and that it was in the best interests of the children that they be permanently committed since the mother had consented to entry of an order of permanent commitment and the father had sexually abused the children within the meaning of section 39.41(1)(f)1 a, Florida Statutes (1981).[1] No other grounds were alleged. The petitions were not filed under the same docket numbers used in the pending dependency proceedings, but were set up as new cases with separate docket numbers (83-1729-CJA and 83-1729-CJB).
On July 15, 1983, a hearing was held on the petitions for permanent commitment. At the outset, HRS requested that the court take judicial notice of the files in the pending dependency cases (82-211-CJA and 82-211-CJB). Counsel for the father objected on the ground that the dependency files did not constitute evidence of abuse for purposes of the permanent commitment hearing. He argued that the allegations of abuse must be proved at the permanent commitment hearing independently of the dependency adjudication previously entered. The court overruled the objection and took judicial notice of the court files.
The father also made an oral motion to dismiss on the ground that the petitions for permanent commitment were too vague and overbroad to put the father on notice of the specific allegations of abuse. HRS responded that throughout the entire proceeding the father was certainly aware of the specific allegations made by HRS. HRS also mentioned that the father had entered a performance agreement and that noncompliance with that agreement was an additional ground for permanent commitment, but HRS did not move to amend its petition to allege this as an additional ground for permanent commitment. The father's motion to dismiss was denied.
During the course of the final hearing, HRS moved that the trial court limit the scope of the hearing to a determination of what disposition would be in the best interests of the children. In reliance upon In the Interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982), HRS argued that the adjudications of dependency previously made were conclusive on the issue of child abuse. Counsel for the father objected on the ground that the father was unrepresented at the time of the original dependency adjudication. The court granted HRS's motion and limited the litigated issues to consideration of the best interests of the children. Despite this ruling, HRS presented evidence that the father had failed to comply with the terms of his performance agreement by not providing HRS with a statement from his therapist certifying him to be a fit parent.
On September 26, 1983, the court entered a final judgment of permanent commitment *1160 for adoption. Relying on the two court files judicially noticed, it found that the element of abuse necessary for permanent commitment had been conclusively proven when the children, based on the parents' alleged stipulation, were previously adjudicated dependent. The court also found that the father had not complied with the terms of his performance agreement and that, since HRS had orally amended its petition to include this as an alternative ground for permanent commitment,[2] his noncompliance constituted an independent ground for such commitment. Finally, the court summarized the testimony of the various witnesses and concluded that it was manifestly in the best interests of the children that they be permanently committed for adoption.
The United States Supreme Court has concisely described the parental interests involved in permanent commitment proceedings:
[A] parent's desire for and right to `the companionship, care, custody, and management of his or her children' is an important interest that `undeniably warrants deference and, absent a powerful countervailing interest, protection.'
* * * * * *
A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore, a commanding one.
Lassiter v. Dept. of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981) (citations and footnote omitted). With these concerns in mind, we now address the specific issues raised by appellant.

I.
Appellant's first point, that the court erred in taking judicial notice of the prior adjudicatory case files because appellant was not represented by counsel at the time, involves two separate issues.

A.
Initially, while we recognize that the court may take judicial notice of its own files, section 90.202(6), Florida Statutes (1983), such notice was wholly unnecessary in this case because the petitions for permanent commitment should have been filed as supplemental pleadings in the original dependency actions that remained pending, rather than in two new actions. This "double filing procedure" needlessly compelled the court to judicially notice other court files to demonstrate continuing jurisdiction over the dependent children. Although this procedure appeared to have received tacit approval in In the Interest of C.M.H., 413 So.2d 418, that decision should not be read as either mandating such procedure or approving it in the face of proper objection. The trial court's decision in C.M.H. merely recited that the court took judicial notice of the prior dependency files without objection from the parties.
The instant proceedings are governed by chapter 39, part 3, Florida Statutes (1981), and the Florida Rules of Juvenile Procedure. These statutes and rules are very specific and must be strictly adhered to, particularly if a threat of permanent commitment is involved. Dependency proceedings are ordinarily divided into two parts, the adjudicatory phase and the dispositional phase. Once the court is vested with jurisdiction and determines dependency in the adjudicatory phase, it maintains continuing jurisdiction throughout the dispositional phase. Rule 8.260, Florida Rules of Juvenile Procedure, provides that a request for permanent commitment may be made in the initial dependency proceeding or "in a pleading subsequent thereto" (emphasis supplied). Permanent commitment is not a separate cause of action; it is merely part of the dispositional phase of the original dependency action.
The procedure followed by HRS in this case is apparently unique to the *1161 fourth judicial circuit.[3] We disapprove of it, not simply because it is inconsistent with the scheme set up by the statutes and rules, but also because it has led to several deficiencies in the record that make it necessary for us to disapprove critical findings by the trial court. The record clearly reflects that the court took judicial notice of prior case files, but it does not reflect whether all pertinent portions of those files were before the court at the hearing. The testimony, exhibits, and orders in the original case were not made evidentiary exhibits in the record in this case. Consequently, those files, including the alleged stipulations of the parents, were not included in the record on appeal. We ordered the parties to supplement the record, but pertinent portions, especially the parents' stipulation, could not be found. Because the court's order of permanent commitment was entered in substantial reliance upon these missing portions of the original case files, proper appellate review on the merits is all but impossible. Certainly we are in no position to accept as an established fact that the appellant father stipulated and agreed in the original cases that he had sexually abused either or both of his minor daughters. Yet that is critical to the sufficiency of the commitment order under review  and precisely what HRS argues we must do.[4] Because the record fails to contain a stipulation or admission by the father to having sexually abused his children, we must review this appeal as if this fact has not been established by competent evidence.

B.
The second aspect of appellant's first point relates to the lack of appointed counsel to represent him at the adjudicatory hearing. He contends that the dependency adjudication was not admissible to establish abuse at the permanent commitment hearing because that would result in the adjudication of an essential element leading to permanent commitment without his being accorded his constitutional right to counsel. It is well established that counsel must be appointed for indigent parents whenever they are threatened with permanent loss of custody of their child or when criminal charges may arise from the proceeding. In re R.W., 429 So.2d 711 (Fla. 5th DCA 1983). In the words of the Florida Supreme Court, "Where permanent termination or child abuse charges might result, counsel must be appointed for (1) the natural married or divorced indigent parents of the child." In the Interest of D.B., 385 So.2d 83, 91 (Fla. 1980).
Since an admission of child abuse is competent evidence in a criminal proceeding, the father was entitled to appointed counsel at the original dependency hearing. In the Interest of R.W., 429 So.2d 711. Although the record appears to indicate that the father might have waived his right to counsel, we need not decide what effect his supposed waiver had on the state's right to subsequently use the adjudication against the father in the permanent commitment proceeding since we conclude that the record in the adjudicatory proceeding failed to establish child abuse by the father.
To summarize, with respect to appellant's first point, we hold that (1) the permanent commitment proceedings should not have been filed as separate cases; (2) those portions of the prior case files judicially noticed and relied on should have been made evidentiary exhibits in this *1162 record; and (3) the prior dependency adjudications are competent proof of the children's dependency and the court's continuing jurisdiction over them, but are incompetent to establish for purposes of permanent commitment, that appellant committed child abuse.

II.
Appellant's second point, regarding the admission of hearsay statements and reports of nontestifying witnesses, does not demonstrate any reversible error. The record reflects that the trial judge was aware of appellant's several hearsay objections and gave no probative effect to the inadmissible hearsay. Section 39.408(2), Florida Statutes (1981), explicitly authorizes the court in a disposition hearing to "receive and consider a predisposition study" in written report form presented by HRS and to receive "any other relevant and material evidence, including other written or oral reports" which "may be relied upon to the extent of its probative value, even though not competent in an adjudicatory hearing." Although some of the evidence received over objection was inadmissible under the Florida Evidence Code, it was not error to receive that evidence under section 39.408(2) since it had some probative value.

III.
In his third point, appellant attacks the sufficiency of the evidence to meet HRS's burden of proving by clear and convincing evidence that appellant was guilty of sexually abusing his children. We realize that the children have not been in their father's custody for several years and that the evidence in the record casts considerable doubt regarding his fitness as a parent. Considerable doubt, however, is not enough. For the reasons discussed hereafter, we reverse on this point for further proceedings.
An order of permanent commitment for adoption must be based upon competent proof of two essential elements: (1) an appropriate ground for permanent commitment under section 39.41(1)(f)(1), Florida Statutes (1981); and (2) a showing that permanent commitment is in the best interests of the children. The permanent termination of parental rights is a drastic step and should not be ordered except upon clear and convincing proof that the natural parent is guilty of conduct constituting an appropriate statutory ground for commitment and a showing that such disposition is in the best interests of the children. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In the Interest of A.B., 444 So.2d 981 (Fla. 1st DCA 1983); In the Interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982); In the Interest of D.A.H., 390 So.2d 379 (Fla. 5th DCA 1980). This standard of proof is substantially greater than the "preponderance of the evidence" standard applicable in an adjudicatory hearing to establish dependency; therefore, to lawfully enter an order severing parental rights, the court must have clear and convincing evidence of record in the commitment proceeding in order to conclude that the alleged statutory grounds exist at that time, and the trial court must make specific findings of fact supported by that evidence. In the Interest of T.S. (Fla. 1st DCA Mar. 14, 1985); In the Interest of L.T., 464 So.2d 201 (Fla. 5th DCA 1985); In the Interest of A.B., 444 So.2d 981.[5] While the original dependency adjudication is the predicate for the court's continuing jurisdiction over the children, and may be relevant to the issue of permanent commitment, the *1163 question of dependency at the time of the commitment hearing is a critical element which must be revisited under the more demanding burden of proof applicable in permanent commitment proceedings. It follows, therefore, that the trial court's finding of dependency in the adjudicatory phase of this case was relevant to demonstrate the court's jurisdiction, but was not competent proof of the father's guilt of the charges made in the petition for permanent commitment.[6]
The sole statutory ground alleged in the petition for permanent commitment was that the father had sexually abused his children. The trial court, relying upon In the Interest of C.M.H., 413 So.2d 418, ruled that HRS was not required to introduce any evidence of child abuse at the permanent commitment hearing for the reason that this element must necessarily have been proven when the children were adjudicated dependent, even though the transcript of the original dependency hearing reveals that neither parent admitted the allegations of the petitions for dependency. The mother acquiesced in the court's taking jurisdiction of the children, but the father remained silent and neither admitted nor denied the allegations of the petitions. The father has never admitted the allegations of abuse in any subsequent proceeding. As previously discussed, competent proof of the sexual abuse charges was not supplied by judicial notice of the prior dependency case files. We conclude, therefore, that the trial court reversibly erred at the permanent commitment hearing in ruling that the charge of abuse had been conclusively proven when the children were adjudicated dependent. Since the record contains insufficient clear and convincing evidence to prove sexual abuse by the father as a ground for permanent commitment, the judgment must be reversed as to that finding.
The trial court also indicated in its final order that permanent commitment of the children was based upon the father's failure to substantially comply with his performance agreement. This is a statutory ground for authorizing permanent commitment. § 39.41(1)(f)1 d, Fla. Stat. (1981). We conclude, however, that the court erred in relying on this ground because HRS had neither pled it nor added it by amendment. Although the trial court recites in its final judgment that HRS made an oral motion to amend its petition to include this additional ground, our review of the transcript of that hearing does not reveal any motion to amend. In fact, HRS requested that the hearing be specifically limited to determining only whether disposition by permanent commitment for adoption was in the best interests of the children. Although HRS did offer some evidence as to the father's noncompliance with the performance agreement, the father's objection was sufficient to preclude a finding that the issue was tried by consent. Hence, that issue was never properly before the court.
The judgment is REVERSED and the case REMANDED for a new evidentiary hearing on the petitions for permanent commitment in a manner consistent with this opinion. The trial court may entertain proposed amendments to the petitions, should any be filed on remand.
SHIVERS and THOMPSON, JJ., concur.
NOTES
[1] Section 39.41(1)(f)1.a authorizes permanent commitment if it is manifestly in the best interests of the child to do so and "the court finds that the parent has abandoned, abused or neglected the child."
[2] As previously noted, the record fails to reveal any motion by HRS to amend its petitions for permanent commitment to allege this additional ground.
[3] The assistant attorney general who appeared at oral argument on behalf of HRS indicated that the fourth judicial circuit is the only circuit in which dependency proceedings are divided into two separate cases.
[4] HRS argues that section 90.202(12), Florida Evidence Code, authorizes the trial court to take judicial notice of "[f]acts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned," and that the original dependency adjudication falls into this classification. Appellee's brief, p. 2. Accordingly, HRS concludes, "the initial adjudication of abuse satisfied the first criteria of permanent commitment and it was not necessary to again prove that the children had been abused." Appellee's brief, p. 3-4.
[5] Unlike the fifth district's decision in L.T., we perceive no direct conflict between this rule and our decision in In the interest of C.M.H., 413 So.2d 418 (Fla. 1st DCA 1982), for the reasons stated in the excellent opinion of Judge Robert P. Smith, Jr., in the A.B. case. Additionally, not only have the controlling statutes been changed since the statutes applied in C.M.H., so that the instant case (unlike C.M.H.) involved a performance agreement, another compelling distinction noted by the court itself in C.M.H. is that here the parents are said to have initially given up their children voluntarily by stipulation rather than involuntarily as in C.M.H. 413 So.2d at 421-22. The court in C.M.H. seemed to recognize a significant distinction between permanent custody proceedings and those involving only questions of temporary custody.
[6] This is not say that the father's admission in a stipulation or testimony at the adjudicatory hearing would not be admissible at the disposition hearing on permanent commitment.