537 So.2d 173 (1989)
In the Interest of T.D., a Child.
No. 88-760.
District Court of Appeal of Florida, First District.
January 13, 1989.
John R. Grass, Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., Eric J. Taylor, Asst. Atty. Gen., for appellee.
WENTWORTH, Judge.
The appellant mother seeks review of a Department of Health and Rehabilitative Services' order terminating her parental rights to her seven-year-old son, T.D., and permanently committing him to the department. She contends the department failed to sustain its burden of proof to establish abuse, abandonment or neglect of the child warranting termination of her parental rights, and erred in permitting repetitive testimony as to the bonding between the foster parents and the child at the adjudicatory hearing on the termination of her rights. We find the department failed to present evidence of abuse, abandonment or neglect of the child to justify termination of the mother's rights, and that evidence as to the bonding between foster parents and T.D. was improperly emphasized at this *174 stage of the proceedings. We therefore reverse.
T.D., born January 10, 1981, was found dependent by the trial court in 1983. His mother has been diagnosed as a chronic paranoid schizophrenic and borderline retarded. His natural father in 1984 executed a consent to permanent commitment, thereby surrendering his parental rights. T.D. was placed with foster parents at age four, and has remained with the foster parents since that time. The mother initially was given scheduled visitations after T.D. was placed with foster parents, but has not been permitted to see her son since August 1986. The mother has two other children, an infant and a three year old son who reside with her and her present husband. A Quarterly Progress Assessment prepared by the department and entered into evidence in the proceeding below indicated that the department had received complaints regarding the mother's improper handling of these children, and was considering removal of the children if complaints continued. Proceedings for permanent commitment of T.D. were begun in July 1985. The department's petition for permanent commitment alleged that appellant had failed to comply with a performance agreement entered into in October 1984. The agreement had required her to attend counseling sessions and obtain an evaluation of her mental deficiencies, participate in a day treatment program, and display a working knowledge of parental duties after attendance at parenting classes. In May 1986, the trial court entered a final judgment granting the department's petition for permanent commitment upon findings that appellant had failed to make sufficient progress in complying with the performance agreement, and suffered from a mental illness which could interfere with her care of the child. Appellant sought review of the order, and this court reversed on grounds that the trial court had improperly relied upon appellant's failure to comply with the performance agreement in terminating her rights. The case was remanded for a determination of whether abuse, abandonment or neglect existed to warrant termination of the mother's rights. In the Interest of T.D., 501 So.2d 93 (Fla. 1st DCA 1987).
On remand, the trial court ordered a new hearing to evaluate appellant's ability to provide a proper home environment. The court directed her to submit to a psychiatric examination prior to the proceedings. Dr. Louis Makarowski conducted the examination of appellant and T.D. In his report, Dr. Makarowski stated that if T.D. is returned to his mother, "he will be damaged permanently in terms of his emotional and intellectual functioning and development."
At the hearing, Mary Beth Burghard, a counselor for the department, testified as to the bonding between the foster parents and T.D. Dr. Makarowski testified that he had no evidence of a bond between T.D. and his natural mother, but that such a bond did exist between T.D. and the foster parents. Steven Amato, appellant's landlord, testified that appellant has two small children living at home with her and her husband, and that she takes care of them. Harry Hughes, a counselor with the department, prepared the "Quarterly Progress Assessment" and testified that appellant is doing a good job maintaining her residence, and seemed to have adequately bonded with her son R.L. Appellant testified that she lives with her husband and two children, does the cleaning and most of the cooking, administers to the physical needs of the family, and has obtained a Florida driver's license. No other testimony was presented.
The court entered a final order granting the department's petition for permanent commitment, based on Dr. Makarowski's findings that T.D. had significantly thrived and improved in intellectual functioning while with the foster parents and would be permanently damaged by removal from them. The court found that appellant neglected T.D. prior to his removal from her home by failing to stimulate him, causing him to be developmentally delayed, and that she continued to lack parenting skills despite efforts to improve. The court also found that appellant appeared to have no appreciation for the allegations of neglect against her, and that her mental condition *175 contributed significantly to her neglect of T.D., and constituted prospective neglect.
Our decisions indicate that parental rights ordinarily should not be terminated solely on the basis of a temporary deficiency which results from conditions beyond the parent's control. See Harden v. Thomas, 329 So.2d 389 (Fla. 1st DCA 1976) (incarceration does not, as a matter of law, constitute abandonment under section 39.01(1), Florida Statutes); In the Interest of P.S., 384 So.2d 656 (Fla. 5th DCA 1980) (Indigency resulting in an inability to provide support does not constitute abandonment); In the Interest of B.W., 498 So.2d 946 (Fla. 5th DCA 1988), (father's failure to communicate with or support his children during a six-month period of incarceration was not abandonment where father repeatedly attempted to have children brought to prison to visit him.) Cf. In the Interest of C.N.G., 531 So.2d 345 (Fla. 5th DCA 1988) (per curiam affirmance of the termination of a mentally retarded mother's parental rights based on the best interest of her child even though the trial court expressly found no abuse, abandonment or neglect of the child by the mother, with a dissent on grounds that the mother's mental condition was beyond her control, the mother had never had custody of the child, and had never abused, neglected or abandoned the child.)
Under section 39.01(27), Florida Statutes (1985), neglect occurs when:

the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the person primarily responsible for the child's welfare deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless services for relief have been offered and rejected. (e.s.)
The termination of parental rights may in certain circumstances be based on prospective abuse or neglect, where the evidence establishes that the parent will be unable to provide necessary child care and support in the future, and it is otherwise in the best interest of the child to take such action. See Spankie v. Department of Health and Rehabilitative Services, 505 So.2d 1357 (Fla. 5th DCA), rev. denied, 513 So.2d 1063 (Fla. 1987) (termination of the mother's rights on evidence that she refused to change her behavior, which had resulted in past abuse and neglect of her child); In the interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982) (termination of the mother's rights on evidence of her refusal to find adequate housing for the child and a psychologist's opinion that the child would be subject to risk of abuse in the mother's care.)
In this case the trial court found only that the mother had neglected T.D. by failing to stimulate him intellectually, thereby causing him to be developmentally delayed, and had failed to improve her parenting skills. The court found that the mother's chronic mental illness "contributed significantly to the neglect of this child by distorting the mother's vision and concept of reality so that she lacked insight into the realties of raising the child... ."
Initially, we conclude that the evidence of appellant's failure to stimulate T.D. intellectually is an inadequate basis, standing alone, upon which to predicate a finding of neglect warranting termination of her parental rights. We also find that the mother's chronic mental illness is a condition beyond her control, and in this case is not shown to be a sufficient basis upon which to predicate the necessary finding of prospective neglect. In the Interest of B.W., supra. Although the trial court conducted a rehearing to determine the mother's present ability to care for T.D., the only evidence presented by the department at the rehearing, other than Dr. Makarowski's reports, related to bonding between T.D. and the foster parents, the mother's current housing arrangement and housekeeping abilities, and the potential for *176 harm if T.D. is removed from the foster home and returned to the mother. Dr. Makarowski's reports detailed the mother's significant mental deficiencies, but did not relate any actions constituting abuse, abandonment or neglect of T.D. Evidence presented by the department at the prior hearing pertained primarily to the mother's failure to comply with the performance agreement. We find an absence of clear and convincing evidence of neglect in the record upon which to predicate termination of the mother's rights.
Testimony concerning the bonding of T.D. with the foster parents was relevant only to a determination of the child's best interests and in this case was improperly emphasized in the adjudication of the mother's abuse, abandonment or neglect of the child. See In the Interest of A.D.J., 466 So.2d 1156 (Fla. 1st DCA 1985).
The order is reversed and the cause remanded for further consistent proceedings.
MILLS and SHIVERS, JJ., concur.