561 So.2d 356 (1990)
In the Interest of J.A., a Child.
No. 89-1739.
District Court of Appeal of Florida, Third District.
May 1, 1990.
*357 Nancy Schleifer, Miami, for appellants, Linda Binder, Guardian Ad Litem, on behalf of J.A., a child, and The Dept. of Health and Rehabilitative Services, State of Fla.
Diana H. Kelly, for appellee/mother.
Before BASKIN, FERGUSON and COPE, JJ.
PER CURIAM.
The guardian ad litem for J.A., and the Department of Health and Rehabilitative Services (HRS), appeal the trial court's denial of HRS' petition to terminate parental rights. The trial court concluded that it was in the best interest of the child to grant the motion, but concluded that paragraph 39.467(2)(c), Florida Statutes (1989), prevented termination of parental rights where the inability to comply with the performance agreement was because of chronic mental illness. The trial court certified the following questions to be of great public importance:
1. § 39.467(2)(e) states that the failure to comply with a performance agreement "because of conditions beyond the parent's or parents' control shall not be used as a ground for termination of parental rights." Does this statute mean that a Court cannot ever terminate the parental rights of a severely and chronically mentally ill person who abused, neglected, or abandoned the child and who, in all probability, cannot be expected in the foreseeable future to be safely reunited with the child?
2. If the answer to question 1 is "yes", whether abused, neglected or abandoned children of seriously and chronically mentally ill parents are being deprived of equal protection under the law in that they may never be eligible for permanent placement with their own adoptive family?
We answer the first question in the negative, do not reach the second question, and reverse the order under review.[1]
J.A. was found to be abused and neglected, and was placed in foster care.[2] The mother suffers from chronic mental illness, and it is highly unlikely that the mother will ever be in a condition to be safely reunited with her son. On two occasions during the period of foster care she kidnapped the child from HRS custody. On a third, she armed herself and planned to take an HRS worker hostage in order to again kidnap the child. Fortunately, the plan was thwarted and the mother was hospitalized for treatment.
HRS entered into a performance agreement with the mother. The trial court found that the mother complied with certain of her obligations under the agreement but
her compliance with therapy and medication was often spotty. However, the Court does not feel that [the mother] had the mental capacity to comply with the performance agreement. [The mother] was unable to stabilize her mental illness in order to ensure that the "circumstances that caused the placement of the child have been remedied to the extent that the well being and safety of the child would not be endangered if the child was returned to her."
The court also found that the child is himself severely emotionally disturbed and requires much more attention than an ordinary child of his age. The court found that the mother, "because of her mental condition cannot now, and may never be able to meet this child's needs." The court concluded *358 that it would be in the best interest of the child to terminate parental rights so that the child can be adopted, but that paragraph 39.467(2)(e), Florida Statutes (1989) prevents such a disposition, as the mother's inability to comply with the performance agreement is a result of a condition beyond her control, her mental illness.
We conclude that, reading chapter 39 as a whole, the legislature did not intend to preclude a termination of parental rights in the circumstances presented here. Instead the matter is remitted to the sound discretion of the trial court to do what is in the best interest of the child, a conclusion which is consistent with the weight of Florida authority on the point. See Burk v. Department of Health & Rehabilitative Services, 476 So.2d 1275, 1278 (Fla. 1985).
Chapter 39 contains important safeguards for both children and parents. In interpreting the statute, however, it must be borne in mind that "parental rights are `subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail.' In re Camm, 294 So.2d 318, 320 (Fla. 1974) [, cert. denied, 419 U.S. 866, 95 S.Ct. 121, 42 L.Ed.2d 103 (1974)]." In the Interest of J.L.P., 416 So.2d 1250, 1252 (Fla. 4th DCA 1982); see also § 39.001(2)(b), Fla. Stat. (1989) (purposes of chapter 39 include "[t]o assure to all children ... the care ... which will best serve the ... welfare of the child... ."). Additionally, "in construing legislation, we must avoid any construction that would produce an unreasonable ... consequence." In the Interest of J.L.P., 416 So.2d at 1252.
In 1987 the legislature enacted extensive statutory provisions pertaining to children who, like J.A., are in foster care. Ch. 87-289 § 9, Laws of Fla. In so doing, the legislature placed a high priority on finding a permanent, stable placement for such children. Section 39.45, Florida Statutes (1989) provides:
(1) The Legislature finds that 7 out of 10 children placed in foster care do not return to their biological families after the first year and that permanent homes could be found for many of these children if their status were reviewed periodically and they were found eligible for adoption.
(2) It is the intent of the Legislature that each child be assured the care, guidance, and control in a permanent home which will serve the best interests of the child's moral, emotional, mental, and physical welfare and that such home preferably be the child's own home or, if that is not possible, an adoptive home. It is the further intent of the Legislature that, if neither of those options is achievable, other options for the child as set out in this section be pursued. It is the intent of the Legislature that permanent placement with the biological or adoptive family be achieved as soon as possible for every child in foster care and that no child remain in foster care longer than 1 year. It is the further intent of the Legislature that a child be reunited with the child's natural family whenever possible and, when not possible, that the child be permanently placed for adoption or, when neither option is achievable, that the child be prepared for alternative permanency goals or placements to include, but not be limited to, long-term foster care, independent living, custody to a relative on a permanent basis with or without legal guardianship, or custody to a foster parent on a permanent basis with or without legal guardianship. It is the intent of the Legislature, therefore, to help ensure a permanent home for a child in foster care by requiring a performance agreement or, if the child's natural parents will not or cannot participate in a performance agreement, a permanent placement plan and a periodic review and report to the court on the child's status... .
(Emphasis added); see also § 39.451(1), Fla. Stat. (1989) ("Permanent adoptive placement is the primary permanency goal when a child is permanently committed to the department or a licensed child-placing agency.").
The language just quoted is an expression of intent designed to aid the courts in reaching a proper interpretation of chapter 39. A statement of intent was chosen, rather than a code of rules, in recognition *359 of the fact that each placement decision must be made on its individual facts, and the trial court must have the latitude to exercise sound discretion in arriving at a disposition which is in the best interest of the child. While the trial court may proceed otherwise in appropriate cases, section 39.45 places the highest priority on returning the child to his own family, and where that is not possible within a reasonable time, adoption is the remedy of choice.
In the present case the mother entered into a performance agreement. Paragraph 39.451(1), Florida Statutes (1989) provides in part:
The purpose of a performance agreement is to ensure permanency for children through recording the actions to be taken by the parties involved in order to quickly assure the safe return of the child to his parents or, if this is not possible, the permanent commitment of the child to the department or licensed child-placing agency for the purpose of finding a permanent adoptive home.

(Emphasis added). Cf. Gerry v. Department of Health & Rehabilitative Services, 476 So.2d 1279, 1280 (Fla. 1985) (where there was documented child abuse, "HRS might be justified in preparing a performance agreement for the permanent commitment of the child for adoption because a safe return of the child to his parents is untenable... . A performance agreement must be offered to Gerry, even if not with a view toward returning custody to her.").
Once the child is in foster care, the court must conduct a review of the child's status at specified intervals. § 39.453, Fla. Stat. (1989). If, at the time the trial court conducts its 18-month review, the child has not returned to the physical custody of his natural parents, the agency "shall initiate termination of parental rights proceedings ... unless ... the court finds that the situation of the child is so extraordinary that the agreement should be extended." § 39.454(2), Fla. Stat. (1989) (emphasis added). Specific findings must be made in order to justify the extension. Id.
Against that background we consider the statutory provision here at issue. Section 39.467, Florida Statutes (1989) provides, insofar as applicable here:
39.467 Adjudicatory hearing. 
.....
(2) The determination of the court regarding termination of parental rights shall be based upon its finding that the following is proven by clear and convincing evidence:
.....
(e) The parent who is offered a performance agreement or permanent placement plan has failed to substantially comply with the agreement or plan. This failure to substantially comply is evidence of abuse, abandonment, or neglect, unless the court finds that the failure to comply with the performance agreement is the result of conditions beyond the control of the parent or parents. In addition, failure to comply because of conditions beyond the parent's or parents' control shall not be used as a ground for termination of parental rights.
The trial court concluded that the mother's mental illness was a condition "beyond the parent's ... control," id., and could not be used as a basis for terminating her parental rights. We disagree. While the trial court's interpretation is a permissible one, to so construe that section would frustrate the underlying purposes of the Act. The statute is intended to apply to those situations in which the prompt, safe return of the child to the parent is a realistic possibility, see § 39.451(1), Fla. Stat. (1989), which has been temporarily frustrated through circumstances beyond the parents' control. To hold otherwise would be at odds with the other provisions of the statute quoted above. In reaching this conclusion we are in accord with In the Interest of R.D.D., Jr., 518 So.2d 412 (Fla.2d DCA 1988); In the Interest of J.B.H., 491 So.2d 1226 (Fla. 4th DCA 1986); In the Interest of W.D.N., 443 So.2d 493 (Fla. 2d DCA 1984); and In the Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982).
The trial court relied on In the Interest of T.D., 537 So.2d 173 (Fla. 1st DCA 1989), but that decision is consistent with the result we reach. T.D. reasons, as we do, "that parental rights ordinarily should not *360 be terminated solely on the basis of a temporary deficiency which results from conditions beyond the parents' control." Id. at 175 (emphasis added; citations omitted). While T.D.'s mother had a chronic mental illness, the crucial facts in that case were that the evidence "did not relate any actions constituting abuse, abandonment or neglect of T.D.," id. at 176, and the mental illness was "not shown to be a sufficient basis upon which to predicate the necessary finding of prospective neglect." Id. at 175 (citation omitted).
The mother contends that the trial court's reading of the statute was correct and that the present situation was intended to be addressed through the "alternative permanency goals or placements" referred to in subsection 39.45(2), Florida Statutes (1989): "long-term foster care, independent living, custody to a relative on a permanent basis with or without legal guardianship, or custody to a foster parent on a permanent basis with or without legal guardianship." While it is true that those placement options are enumerated in the statute, the statement of legislative intent establishes the preferred alternatives "that a child be reunited with the child's natural family whenever possible and, when not possible, that the child be permanently placed for adoption... ." As indicated previously, section 39.45 is a statement of intent, not a code of rules, and the trial court has discretion in selecting among the placement alternatives there described. Reading the statutory provisions as a whole, we conclude that the trial court was not restricted to the alternative permanency goals listed in that section, but was instead entitled to consider an adoptive home as one of the permissible options. As the trial court concluded that termination of parental rights and placement for adoption would be in the child's best interest, HRS' motion should have been granted.
We reverse the order under review and remand for further proceedings consistent herewith.
NOTES
[1] The trial court also certified that the question presented is an issue of great public importance in need of immediate resolution by the Florida Supreme Court. We concluded that the questions presented, while important, did not warrant "bypass" certification under Rule 9.125, Florida Rules of Appellate Procedure, and accordingly denied the guardian ad litem's request for certification under that rule.
[2] The trial court's findings are quite detailed, but need not be set forth at length here.