591 So.2d 1130 (1992)
In the Interest of R., CHILDREN.
No. 90-3177.
District Court of Appeal of Florida, Fourth District.
January 8, 1992.
Kim A. Marjenhoff, Fort Lauderdale, for appellant Natural Mother.
Patricia B. Wright (Gaste-Azoro), Fort Lauderdale, for appellee Dept. of HRS.
PER CURIAM.
The natural mother appeals two final judgments terminating her parental rights and permanently committing her two children to the Department of Health and Rehabilitative Services (HRS) for subsequent adoption. We affirm, and choose to discuss only two of the three issues raised by appellant, having duly considered all three.
On November 9, 1986, appellant left her two sons J.R. (age 8) and K.R. (age 4) in the care of a baby-sitter at the motel where she had been residing. When appellant failed to return at the appointed hour, the *1131 baby-sitter called the police. The baby-sitter, who had a previous conviction for prostitution, told police that appellant frequently left the children with her and stayed away from early in the morning until late at night. The older child had not attended school in months and both children appeared to police to be undernourished. Both children were placed in the care of HRS.
HRS filed a detention petition and petition for adjudication of dependency. At the December 5, 1986 arraignment, appellant's whereabouts still were unknown despite the department's reasonable efforts to locate her. The trial court subsequently entered orders of dependency as to both children. HRS filed a permanent placement plan with the court on December 29, 1986; thus the children have been in foster care for five years.
Appellant eventually was located at the Broward County Jail and on January 28, 1987, she entered into a performance agreement with HRS. By July 26, 1987, appellant agreed to: (1) receive a psychological evaluation and follow all recommendations; (2) receive a Broward Alcohol Rehabilitation Center (BARC) or similar drug evaluation and follow all recommendations; (3) locate and maintain adequate housing for a three month period; and (4) attend and successfully complete a Parent Effectiveness Training (PET) course. The stated goal of the performance agreement was reunification.
By May 22, 1987, appellant had not had a psychological evaluation, had not completed a drug rehabilitation program, and had not maintained adequate housing and employment. The trial court extended the term of the performance agreement and ordered that it expire on December 31, 1987. On November 13, 1987, the trial court again found that appellant had not complied with the terms of the agreement.
On December 31, 1987, appellant and HRS entered into a second performance agreement. The terms of this agreement virtually were identical to those contained within the original agreement. On May 27, 1988, the trial court again found that appellant was not in substantial compliance with the terms of the performance agreement. In fact, appellant's whereabouts were unknown at the time of the review hearing. Appellant had not visited her children since February 16, 1988. By December, 1988, appellant still had not been in contact with HRS nor had she visited with her children.
On March 15, 1989, appellant entered into a third performance agreement with HRS. The trial court accepted this agreement on April 21, 1989. On July, 7, 1989, the trial court entered an order finding that appellant had not complied with any of the terms of the performance agreement.
On December 8, 1989, the trial court ordered extended foster care and again found that appellant had not complied with any of the terms of the third performance agreement. Appellant had not been in contact with HRS since March, 1989 and her whereabouts were unknown. The trial court ordered HRS to file petitions for permanent commitment within sixty days.
On January 22, 1990, HRS filed petitions for termination of parental rights and permanent commitment for both children. HRS alleged that appellant had neglected her children as evidenced by her failure to substantially comply with the performance agreements. HRS also alleged that such neglect likely would continue in the foreseeable future. On July 6, 1990, HRS filed a permanent placement plan with the court. The specified goal of this plan was "permanent commitment for adoptive placement."
At the August 3, 1990 adjudicatory hearing, appellant testified that on November 16, 1986, she left her two children with a baby-sitter while she went to search for an apartment. Appellant acknowledged that at the time her children were taken into custody, J.R. had not been attending school for approximately one month and had severe dental problems. J.R. was asthmatic and had severe allergies when he was born. The medications destroyed the enamel on his teeth, and when he was sixteen months old, he had six teeth removed. Appellant stated the she took J.R. to Jackson Memorial Hospital "a couple of times" where they *1132 filed and patched his teeth. Appellant also stated that K.R. had two bad teeth.
Appellant admitted that she is a substance abuser. Her heartbreaking history of personal survival reveals that after suffering physical and sexual abuse from two stepfathers, she ran away to live with her natural father when she was fourteen years of age, her mother having died when she was eight years old. Appellant's natural father encouraged her to drink. She began taking his pain relievers and engaged in a sexual relationship with him because he told her "it was God's plan." Her father also "arranged" for her to engage in sexual intercourse with other men in his presence. Appellant's sons were conceived during two such encounters. Appellant testified that after her children were born, however, her father raised them "like sons." By November 1986, appellant's father had died and she was addicted to both alcohol and cocaine.
At the disposition hearing held on October 26, 1990, the trial judge did acknowledge that both children told her that they wanted to live with their mother "as one big happy family." The children did, however, understand that this was not feasible and expressed a desire to be adopted. That same day, the trial court entered the final judgments terminating appellant's parental rights to both children and committing the children to the custody of HRS for subsequent adoption. The instant appeal followed.
Appellant contends that her drug and alcohol addiction resulted from factors beyond her control; therefore her failure to comply with the terms of the performance agreements was "statutorily excusable" pursuant section 39.467(2)(e), Florida Statutes (1989). However, the section to which appellant refers was amended on July 3, 1990. See Ch. 90-306, § 19, Laws of Fla. Because the adjudicatory hearing occurred on August 3, 1990, the amended statute applies to the instant case. Presently, a parent's failure to substantially comply with a performance agreement or placement plan is evidence of abuse, abandonment, or neglect "unless the court finds that the failure to comply with the performance agreement is due to the lack of financial resources of the parent or parents or due to the failure of the department to make reasonable efforts to reunify the family." Section 39.467(3)(e), Fla. Stat. (Supp. 1990) (emphasis added). The statute no longer refers to factors beyond a parent's control.
Appellant does not allege that her noncompliance was due to her lack of financial resources or the failure of the department to make reasonable efforts to reunify the family. Moreover, even if the old "beyond the control of the parent" standard is applied, the fact that appellant is an alcoholic and a drug addict does not, by itself, compel reversal. An illness beyond the parent's control can support the termination of parental rights when it is accompanied by abuse, abandonment, or neglect of the minor child and the evidence before the court establishes that such neglect or abuse would continue in the future. In re J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982). Parental rights are subject to the overriding principle that it is the ultimate welfare or best interest of the child which must prevail. Id. at 1252; see also In re J.A., 561 So.2d 356 (Fla. 3d DCA 1990).
Appellant contends that her history of treatment demonstrates that she can care for her children and that she desires to maintain sobriety and stop using drugs and alcohol. However, appellant spent most of the time from November 1986 to August 1990 in jail. When she was out of jail, she did spend seven months in residential treatment program called Stepping Stones, but suffered two relapses. At the hearing, appellant could not recall what she did or where she lived in 1988. She never maintained steady employment and while she believed that she had been convicted for prostitution, she was unsure.
While it is true that appellant resided in the Tier Program, a prison based treatment facility, at the time of the hearing, she has neither maintained employment nor experienced what it is like to be sober in a noncustodial environment. When asked if she *1133 had her addiction problem under control, appellant responded "as long as I don't pick up the first one." At the time of the hearing, appellant had not yet been out of custody nor had she maintained sobriety from commencement of the case to its end. Therefore, there is no indication in the record that appellant had developed a sufficient support system or network to maintain her sobriety when and if her children were returned to her. Consequently, the likelihood of prospective neglect is real.
Appellant also contends that the trial court erred in terminating her parental rights because HRS failed to demonstrate, by clear and convincing evidence, that appellant failed to substantially comply with the three performance agreements she executed.
The trial court's determination regarding termination of parental rights shall be based on its finding that the following is proven by clear and convincing evidence: (a) the child was adjudicated dependent; (b) the trial court previously entered a disposition order; (c) the parent was informed of his or her right to counsel; (d) a performance agreement or a permanent placement plan has been offered to the parent; and (e) the parent who is offered a performance agreement or permanent placement plan has failed to substantially comply with the agreement or plan. Section 39.467(3), Fla. Stat. (Supp. 1990). "`Substantial compliance' means that the circumstances which caused the placement in foster care have been remedied to the extent that the well-being and safety of the child will not be endangered upon the child's being returned to the child's parent or guardian." Section 39.001(50), Fla. Stat. (1989).
Appellant maintains that she did in fact substantially comply with the terms of the performance agreements. The record is clear, however, that appellant's compliance was at best sporadic. The various review orders entered during the course of this case indicate that during the four years appellant's children were in foster care, she did not maintain stable housing, stable employment, or seek counseling to conquer her drug addiction. In fact, for most of this time period, both HRS and the trial court were unaware of appellant's whereabouts. Appellant did submit to a psychological examination at the Broward Correctional Institute and did enter various treatment programs during the course of her various jail and prison terms. However, the record indicates that appellant only complied with the terms of the agreements when she was in custody. To date, appellant has not demonstrated that she has remedied the circumstances which caused the placement of her children into foster care. Although appellant has admitted to her substance abuse problem, she never has effectively coped with her addiction outside of jail. Consequently, the record supports the trial court's finding of neglect.
Although appellant maintains that termination of parental rights is not an acceptable option when there is still a reasonable possibility of reunifying her family, appellant's children entered the system in 1986. While the Legislature has expressed a real desire to reunite children with their biological parents whenever possible, it also has indicated that no child should remain in foster care for more than one year. Section 39.45, Fla. Stat. (1989). At the time of the adjudicatory hearing, there still was no indication that appellant could care for her children.
How sad that we must repeat in 1992 what we said in J.L.P. in 1982: "Our sympathy for the mother cannot blind us to the overriding concern for the welfare of the child. We cannot help the one and shall not harm the other." J.L.P., 416 So.2d at 1253.
GLICKSTEIN, C.J., and STONE and FARMER, JJ., concur.