667 So.2d 804 (1995)
Nancy HRONCICH, Appellant,
v.
DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES, Appellee.
No. 95-761.
District Court of Appeal of Florida, Fifth District.
November 28, 1995.
As Amended on Denial of Rehearing February 9, 1996.
*805 Douglas D. Marks of Potter, McClelland & Marks, P.A., Melbourne, for Appellant.
Cindy M. Rothfeld, Cocoa, for Appellee.
SHARP, Judge.
Hroncich, the natural mother, appeals from a judgment terminating her parental rights to her daughter, Veronica, age four. She argues that HRS failed to produce clear and convincing evidence of prospective risk of neglect to justify termination of her parental rights. We agree and reverse.
This case began in February of 1992 when HRS received a call about Veronica. An investigator reported that the apartment in which Hroncich and Veronica were living was littered with dirty clothes, and that it smelled of spoiling food and urine. Veronica appeared as if she had been playing in the yard and needed a bath.
The case was referred to Protective Services, and in April of 1992, and again in November of that year, an investigator reported similar conditions as to both the child and the apartment. Hroncich explained that Veronica slipped out of the apartment occasionally without her knowledge, and she had to find her and bring her home. The investigations resulted in referrals to Protective Services and the case was closed without classification.
Hroncich was told HRS wanted someone to come to her home and help her with homemaking tasks. She refused. Thereafter a non-sheltered dependency petition was filed and an order entered. The court ordered protective supervision and the establishment of a plan for treatment, training, and conduct. Hroncich signed the plan, but did not comply with it.
In February of 1993, Hroncich was evicted from her apartment because the residence was sold. Veronica was placed in a shelter. For a time, Hroncich was homeless.
The evidence in this record showed that although Hroncich was intelligent and had the potential to support herself and her child,[1] she was suffering from schizophrenia, paranoid type. Beverly Goering-Nichols, a psychologist who evaluated Hroncich for the court, testified that Hroncich's mental illness was in a residual phase, and she had no retardation or intellectual impairment.
Goering-Nichols further testified that schizophrenia is a mental illness which typically strikes late in adolescence. Persons suffering from this condition experience generalized anxiety and anger. They appear argumentative and tend to interpret the actions of others as deliberately meant to demean them. It is a thought disorder problem and the outside world appears stilted. Victims are intent and tense and can be difficult to deal with. Active or acute symptoms of schizophrenia include hallucinations, incoherence and bizarre delusions.
In the residual phase, in which Hroncich was classified, persons are impaired in their ability to take care of their daily lives and needs and they are characterized by social isolation. As homemakers and wage earners their abilities to function are diminished, and they exhibit peculiar behaviors. Personal hygiene is neglected. They have symptoms *806 of thought disorder, even though the illness is not active or acute.
It has now been determined that schizophrenia is caused by a chemical imbalance in the body, and it can be treated successfully with medication. The illness is not a matter of choice to the person who has it, and the impairment suffered is real and a direct cause of the disease. Goering-Nichols testified that in remission, the person can go into high functioning.[2] She said it was very safe to say that in remission, with treatment, a person's general manner of functioning will improve. Great improvement can be achieved through drug therapy within a few weeks.
One of the main features of the disease is suspicion and lack of trust of others. It is very important in the treatment of such persons that there be a good rapport between the therapist and the patient. Such persons need support and nurturing, and a lot of hands-on effort. The disease often scares people away who are untrained and unfamiliar with the characteristics of the disease. Such patients can be dirty and verbally abusive.
Aside from this mental illness, there was nothing in this record that appeared to render Hroncich incapable of parenting her child and carrying out the tasks required of her under the performance agreement. The expert recommended Hroncich be referred to a mental health agency such as Circles of Care, and that she obtain out-patient treatment. She said:
My belief was what needed to happen was that she needed to get into a treatment situation where she could be provided some support and help and stability. And if she were to have that kind of support and help and stability, which can be offered through such treatment, then I think that would greatly enhance her ability to be compliant on the other issues; such as, the parenting education, etc., you know. But I felt that she needed some help and support. And that was prerequisite to her being able to successfully complete the other tasks.
However, she did not discuss her recommendations with Hroncich, although Hroncich stopped by to see her on several occasions. The recommendations were given to Hroncich's HRS counselor and to Hroncich's attorney.
Between the time of Veronica's being placed in foster care and the time of the hearing to terminate parental rights, Hroncich's case had been assigned to five successive case workers. The last one, Chatwood, had an undergraduate degree in psychology, and was the only person who had worked with Hroncich from HRS who had any experience or knowledge in dealing with people suffering from this kind of mental disorder. The original performance agreement was drafted by a counselor who had never met or talked with Hroncich, and who was unaware of her illness.
Shortly after Chatwood became involved in her case, Hroncich made great strides forward. She obtained an apartment and applied for social security. Chatwood had physically taken Hroncich to accomplish these tasks. Hroncich explained she applied for social security income in September of 1994. She waited that long because she had thought she would have to make herself disabled to get it, and that would jeopardize her ability to become employed in the future. She also delayed going to the housing authority for help in obtaining a place to live because she had no income.
At the time of the final hearing, she had completed all the parenting classes required by the HRS plan and received a certificate of successful completion. She had completed her mental health assessment and maintained contact with HRS, providing them with a list of names of people living within her residence. She had applied for and was receiving social security income of $400.00 per month, and had a lease to a one-bedroom apartment. It was conceded by HRS that Hroncich had "religiously" exercised visitation with Veronica. In closing argument the *807 attorney for HRS said Hroncich's compliance was "too little too late."
At the conclusion of the hearing, the trial judge ruled that HRS had proven by clear and convincing evidence that Hroncich neglected her child based on the original dirty apartment reports and the fact that Hroncich allowed herself to be evicted from her apartment in 1992. Further the court found termination of parental rights was necessary as the least restrictive means to protect the child from risk of prospective neglect by Hroncich. We disagree on both points.
Termination of parental rights involves a fundamental liberty interest, protected by the federal and state constitutions. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); Padgett v. Dept. of Health and Rehabilitative Services, 577 So.2d 565 (Fla.1991). To justify termination, the state must show by clear and convincing evidence that the parent abused, neglected or abandoned the child, or that the child is at substantial risk of future abuse, neglect or abandonment. § 39.464, Fla.Stat. (1993); Padgett. In establishing future risk, the evidence must clearly show some mental or emotional deficiency on the part of the parent which will be likely to result in future abuse, neglect or abandonment. In the Interest of T.D., 537 So.2d 173 (Fla. 1st DCA 1989).
In this case we do not think the state sufficiently proved Veronica was neglected by Hroncich. Section 39.01(37) provides a description of neglect.
`Neglect' occurs when the parent or legal custodian of a child ... deprives a child of, or allows a child to be deprived of, necessary food, clothing, shelter, or medical treatment or permits a child to live in an environment when such deprivation or environment causes the child's physical, mental, or emotional health to be significantly impaired or to be in danger of being significantly impaired. The foregoing circumstances shall not be considered neglect if caused primarily by financial inability unless services for relief have been offered and rejected....
At most the state proved in this case that on three occasions Hroncich's apartment was dirty, and the child was wearing dirty clothes and needed a bath.
A further problem is that the evidence testified to occurred prior to Veronica being adjudicated dependent. The state may not rely on an adjudication of dependency as proof of factors necessary to support the termination of parental rights. Darkes v. Department of Health and Rehabilitative Services, 495 So.2d 873 (Fla. 5th DCA 1986); In the Interest of T.S., 464 So.2d 677 (Fla. 5th DCA 1985). In addition, the evidence testified to occurred prior to March 1993, when Hroncich was evicted from her apartment. The only testimony in the record about this eviction was that the building was sold and the new owners did not want to rent to Hroncich. There was no explanation why the new owners chose this course of conduct, although the facts speak for themselves. At that time, HRS placed Veronica in a shelter. It should be noted that not only did these events occur prior to March 1993, but also that HRS did not deem these circumstances to be so egregious at the time they were occurring that it initiated a shelter dependency. A shelter dependency was done only when Hroncich was evicted from her apartment.
At the time of the hearing to terminate, Hroncich had substantially complied with the performance agreement. HRS' complaint was that they were not complied with in a timely manner. Hroncich argues that, in any event, termination may not rest solely on the failure to substantially comply with a compliance agreement. See In the Interest of R.W., 495 So.2d 133 (Fla.1986); In the Interest of F.A.C. and G.E.C., 625 So.2d 909 (Fla. 2d DCA 1993), rev. denied, 634 So.2d 623 (Fla. 1994).
Further, the evidence indicates that Hroncich did not initially comply with the performance agreement, at least in part, due to her mental condition. As discussed earlier, her mental illness interfered with her ability to timely perform the necessary tasks because she was suspicious and mistrustful. There were five case workers assigned in two years, and when she had the benefit of a case *808 worker with knowledge and experience in dealing with people victimized by such a mental illness, Hroncich immediately improved and obtained an apartment in less than five or six weeks. These circumstances mitigate the "too little too late" argument. Surely, Hroncich's mental illness must be considered in evaluating how she responded to HRS, and how it could have handled her situation better.
Nor do we think that this record establishes prospective neglect by clear and convincing evidence. Before prospective neglect arises as a valid ground for termination, the evidence must show a parent's past conduct, or current mental condition makes the risk of future harm to the child likely. Padgett; Richmond v. Department of Health and Rehabilitative Services, 658 So.2d 176 (Fla. 5th DCA 1995); Williams v. Department of Health and Rehabilitative Services, 648 So.2d 841 (Fla. 5th DCA 1995) (drug addiction evidence of prospective neglect); Palmer v. Department of Health and Rehabilitative Services, 547 So.2d 981 (Fla. 5th DCA 1989) (prospective sexual abuse). In addition there must be no reasonable basis to conclude that past behaviors will improve. Palmer. Here the testimony of the only expert witness, Goering-Nichols, falls far short of that proof. Indeed, if anything, her testimony established that with proper counseling and support, Hroncich's chances for a normal, functional life as worker and homemaker were likely and very possible.
In this case, termination of parental rights was not warranted by this record. It is clearly not the least restrictive means of protecting the child from harm.[3] Accordingly we reverse this judgment of termination of parental rights, and remand to the trial court for further proceedings, if appropriate.[4]
REVERSED and REMANDED
PETERSON, C.J., and THOMPSON, J., concur.
NOTES
[1] Hroncich graduated from the University of Central Florida with a Bachelor of Arts in Education in 1971, obtained a real estate sales license in 1974, and received a Broker's license in 1978.
[2] At the time of the hearing it appeared that the Nobel prize in mathematics was going to be awarded to a person who was an acute paranoid schizophrenic whose disease had gone into remission.
[3] U.S. Const, Amend. XIV; In the Interest of T.M., 641 So.2d 410 (Fla.1994). Section 39.01(21), Florida Statutes (1993), states:

`Disposition hearing' means a hearing in which the court determines the most appropriate dispositional services in the least restrictive available setting provided for under s. 39.052(3), in delinquency cases; s. 39.408(3), in dependency cases; s. 39.44(3), in child-in-need-of-services cases; or s. 39.469, in termination of parental rights cases.
[4] HRS cites several cases which it argues are in conflict with this opinion. All are distinguishable. We first note that in all cases argued the evidence presented occurred after the dependency hearing, not before as in the case sub judice. In Palmer v. Department of Health and Rehabilitative Services, 547 So.2d 981 (Fla.5th DCA 1989), the court found prospective abuse where the defendant had sexually abused the child, pled guilty to committing a lewd and lascivious act, and entered a prison sex offender program from which he was released because he could not benefit from it because he was "an untreatable pedophile." In contrast Hroncich's illness is treatable, and it is presently in the residual phase. In In the Interest of A.M., 614 So.2d 1161 (Fla.4th DCA 1993), the mother failed to substantially comply with the performance agreement and had abandoned her child. In In the Interest of C.W., 616 So.2d 127 (Fla.2d DCA 1993), the mother was a schizophrenic who had not substantially complied with the performance agreement, one requirement of which was that she act in a rational manner. Although Hroncich essentially became a "street person" by temporarily living in the woods after she was evicted from her apartment, we do not think her behavior, taken in its entirety, rises to the level of failing to act in an overall rational manner. Finally, in In the Interest of J.A., 561 So.2d 356 (Fla.3d DCA 1990), the court held that the mother's mental illness was a circumstance to be considered in termination proceedings. The mother had armed herself and planned to take an HRS worker hostage, and the court found it "highly unlikely" that she could ever be reunited with her son who required "much more attention than an ordinary child his age." In these cases, the parent's illness was untreatable, it was highly unlikely that the parent could ever adequately parent the child, or other behavior, such as abandonment, existed. The mere affliction with a mental illness which produces behavior or symptoms harmful to a child for a limited period of time does not necessarily support a finding of prospective abuse or mean that a parent will never be able to care for his/her child which is sufficient to justify terminating the parent's rights. Rather, we agree with the J.A. opinion that a parent's mental illness is but one factor to be considered; all other relevant facts must also be considered.