POLEN, J.
Appellant, I.Z., the mother, appeals the trial court’s order granting Appellees, B.H. and R.M.’s petition to terminate I.Z.’s parental rights. We reverse.
The Department of Children and Families (DCF) reached its goal of permanency in this case in 2007 when it placed the child, S.F., in a permanent guardianship with B.H. and R.M. This court affirmed the trial court’s final order terminating DCF’s protective supervision and specifically noted that all parties agreed that the *407 parent(s)[1] should be able to maintain some contact with the child. I.Z. v. Dep’t of Children & Families, 967 So.2d 425, 427 (Fla. 4th DCA 2007).
In July 2009, B.H. and R.M. filed a petition to terminate the mother’s parental rights alleging that the mother abandoned the child, the mother engaged in conduct toward the child which demonstrated that her continuing involvement in the child’s life was a threat to the child’s well-being, and the mother continued to abandon or neglect the child despite a case plan having been filed. For these reasons, B.H. and R.M. asserted that termination was legally warranted under subsections 39.806(l)(b), (c), and (e). After considering extensive testimony from numerous witnesses, the trial court found that termination was appropriate on all three grounds alleged and granted the petition. Much of the evidence had to do with events which occurred before permanency was established in 2007 and other evidence was conflicting.
The mother has a long history of mental illness and anger management problems. Because of these issues, the mother’s visits with the child take place at Jewish Adoption and Foster Care Options (JAFCO) facilities on a monthly, bi-weekly or weekly basis depending on the mother’s stability. The visits are supervised.
From December 2007 through December 2008, the mother visited the child as scheduled throughout the entire year. The social worker who supervised the visits testified that the mother and the child had “a very nice relationship,” that the mother was stable during that time and came prepared with activities, and that the two played and laughed together. Out of all of the monthly visits, the social worker identified three incidences of concern. In each of the incidences, the child wanted to play a particular game, and the mother either wanted to play a different game, or wanted the child to read a book. The mother explained that she was trying to do everything she could in the limited amount of time that she had to parent her child and teach the child how to read. Still, all of the visits throughout the year ended happily with the child and mother hugging, and saying that they loved one another. Throughout the year, the mother never lost control during a visit, and the child’s safety was never in question.
In February 2009, the mother was arrested for aggravated battery on her grandmother. During an argument, the mother kicked her grandmother in the shin resulting in a laceration. Following her arrest, the mother was incarcerated at the Broward County Jail for nine months. There were no supervised visits during the mother’s incarceration. The mother testified that she attempted to communicate with her daughter during her incarceration by mailing a birthday card to JAFCO. It was during this time that B.H. and R.M. filed the petition to terminate the mother’s parental rights. Upon the mother’s release, no visitation was permitted because the social worker had determined that both the child and the mother were anxious about the pending termination proceedings.
Though it was undisputed that the mother continues to struggle with her mental health issues, the evidence showed that the mother also continues to seek treatment and mental stability by means of therapy and medication. It is also clear from the record that there are safeguards in place to ensure that any potential impact on the child from the mother’s occasional instability is minimal.
*408 The child testified that she wants to see her mother, that she is not afraid of her mother, and that she has never been uncomfortable during a visit with her mother. The child also testified that she wants to be adopted, but believed that she would be able to see her mother even after the adoption, if her mother was well.[2]
This court has summarized the standard of review in a case involving the termination of parental rights:
A termination of parental rights proceeding involves a two-step process. First, the court must find by clear and convincing evidence that one of the grounds set forth in section 39.806, Florida Statutes (2002), has been proven. Second, the court must determine what outcome is in the manifest best interest of the children.
C.M. v. Dep’t of Children & Family Servs., 854 So.2d 777, 779-80 (Fla. 4th DCA 2003). Furthermore, the petitioning party must establish that termination of parental rights is the least restrictive means of protecting the child from harm. In re D.A., 846 So.2d 1250, 1251-52 (Fla. 2d DCA 2003).
The trial court first determined that termination of parental rights was appropriate under section 39.806(l)(b), Florida Statutes, which provides for the termination of parental rights when a parent has abandoned his or her child. Abandonment is defined as:
[A] situation in which the parent or legal custodian of a child or, in the absence of a parent or legal custodian, the caregiver, while being able, makes no provision for the child’s support and has failed to establish or maintain a substantial and positive relationship with the child. For purposes of this subsection, “establish or maintain a substantial and positive relationship” includes, but is not limited to, frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the child, and the exercise of parental rights and responsibilities. Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child.
§ 39.01(1), Fla. Stat. (2010).
The trial court found that the mother was incarcerated from February 2009 until November 2009, and that during that period, there were no visits and “no testimony that the mother even thought to send a card or letter to [the child]” and that “the mother made no effort to maintain a bond with [the child] during this period of time.” Contrary to the court’s finding, the mother testified that she sent a birthday card to the child while she was incarcerated. The court also found that, upon the mother’s November 2009 release, there was a visit in December 2009, and that the therapist recommended visits stop at that time until therapeutically recommended again because of the mother’s inappropriate behavior during the visit. However, the record indicates that no visitation was permitted upon the mother’s release from jail because the termination proceedings were pending.
Appellees cite T.G. v. Department of Children & Families, 8 So.3d 1198 (Fla. 4th DCA 2009), in which this court affirmed the trial court’s termination of pa *409 rental rights based on the mother’s abandonment of her children. Id. at 1198. In T.G., the mother sporadically visited her three children during their ten years under protective supervision and did not see them at all in the year immediately preceding the final hearings on termination. Id. at 1199.
The present case is materially distinguishable from T.G. Here, since the child’s initial removal from her home in 2002, the mother has made a dedicated effort to maintain contact with the child. The mother’s failure to visit with the child for a year preceding the final hearings was explained: the mother was incarcerated from February 2009 until November 2009 and when she was released, she was not permitted visitation due to the pending termination proceedings. Moreover, the mother testified to having sent a birthday card during her incarceration in order to maintain contact with the child.
The trial court also determined that termination of parental rights was proper under section 39.806(l)(c), which provides for such termination when the court determines that the parent’s conduct toward the child threatens the child’s well-being. Specifically, subsection (c) states that the following may be grounds for termination:
When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were provided through a previous plan or offered as a case plan from a child welfare agency.
§ 39.806(l)(c).
B.H. and R.M. argue that the trial court’s determination here was supported by clear and convincing evidence because the record shows that the mother’s mental health needs are “enormous and continuing.” However, the statute clearly provides that termination of one’s parental rights is warranted where the parent’s conduct toward the child or toward other children demonstrates a threat to the child’s well-being. Evidence of a parent’s mental health issues, without evidence that those issues have manifested themselves in behavior that poses a risk to the child’s well-being, is insufficient to justify termination of parental rights under this subsection.
The only evidence which might have supported a finding that the mother’s conduct toward the child threatened the child’s well-being involved a visit which occurred in December 2006, before permanency was established. At that visit, the mother brought the child a gift. When the mother realized that the child was not pleased with the gift and wanted to pick something out of the JAFCO “treasure chest,” the mother began to raise her voice and told the child she was “spoiled.” JAFCO workers told the mother she was scaring the child and removed the child to safety. The mother found the child in the executive director’s office eating chocolate and, again, had a reaction that frightened the child. The visit was terminated, and the mother did not regain visitation rights until she achieved stability six months later. The trial court should have given this evidence minimal weight, if any, in considering the petition to terminate the mother’s parental rights. The incident occurred before the trial court initially determined that a permanent guardianship and continued visitation with the mother was in the best interests of the child. Moreover, the incident occurred nearly three years prior to the trial court’s deci *410 sion to terminate the mother’s parental rights.
Finally, the trial court terminated the mother’s parental rights under section 39.806(l)(e), which provides, in relevant part, that parental rights may be terminated:
(e) When a child has been adjudicated dependent, a case plan has been filed with the court, and:
1. The child continues to be abused, neglected, or abandoned by the parent or parents. The failure of the parent or parents to substantially comply with the case plan for a period of 9 months after an adjudication of the child as a dependent child or the child’s placement into shelter care, whichever occurs first, constitutes evidence of continuing abuse, neglect, or abandonment unless the failure to substantially comply with the case plan was due to the parent’s lack of financial resources or to the failure of the department to make reasonable efforts to reunify the parent and child. The 9-month period begins to run only after the child’s placement into shelter care or the entry of a disposition order placing the custody of the child with the department or a person other than the parent and the court’s approval of a case plan having the goal of reunification with the parent, whichever occurs first.
§ 39.806(l)(e)l., Fla. Stat. (2010).
Here, the trial court simply referred back to its findings under the other two grounds and determined that those findings also supported termination under this section. The court also noted that the mother had done nothing to work on her issues since the case closed in 2007. This finding is not supported by the record which indicates that the mother had engaged in extensive group therapy and had been trying to find a medication that would help her achieve mental stability. Moreover, failure to comply with a case plan cannot, standing alone, provide the basis for termination of parental rights. Colluci v. State Dep’t of Health & Rehab. Servs., 664 So.2d 1142, 1144 (Fla. 4th DCA 1995) (citing In the Interest of R.W., 495 So.2d 133 (Fla.1986)). Instead, abandonment, abuse, or neglect must be shown by clear and convincing evidence. R.W., 495 So.2d at 135. In the present case, B.H. and R.M. did not show abandonment, much less abuse or neglect by the mother. Therefore, the trial court’s termination of parental rights on this ground was also error.

Reversed and Remanded.

CIKLIN and LEVINE, JJ., concur.

. The father has voluntarily surrendered his parental rights.

. The potential adoptive father, R.M., testified that he had no intentions of allowing the child to visit with the mother after the termination of parental rights and adoption were complete. R.M. also stated that no one had explained this to the child. The child's preference to be adopted must be considered in light of the fact that she does not understand that she may not be able to be adopted and continue to visit with her mother.