CONNER, J.
D.B. (“the Father”) appeals the termination of his parental rights to his child Z.S. (“the Child”).[1] The Department of Children and Families (“the Department”) petitioned to terminate the Father’s parental rights under section 39.806(l)(c), Florida Statutes (2010), which allows termination of parental rights when a parent engages in conduct that demonstrates his continued involvement as a parent threatens the life, safety, well-being, or physical, mental, or emotional safety of the Child. He contends the trial court erred because he was never offered a case plan, despite his request for one. Finally, he contends the Department failed to prove termination of parental rights was the least restrictive alternative to protect the Child. We affirm the judgment of the trial court.

Factual Determinations By The Tnal CouH

The lengthy final judgment contains numerous findings of fact based on evidence the trial court determined to be clear and convincing.
At the time of the adjudicatory hearing, the Child was two years and one month old. He was removed from the mother three days after birth because the mother had severe untreated mental health issues. One year after removal, the Child was adjudicated dependent with the consent of the mother. At that time, the father of the Child was unknown because the mother refused to identify him. When the Child was almost a year and a half old, the mother finally identified the Father as the biological father. Paternity was confirmed by DNA testing.
After paternity was confirmed, the Father began weekly supervised visits with the Child and established a bond with him. The visitations went well. A home study of the Father’s home found it to be clean and without safety hazards. The Father was employed part time and also received social security benefits for mental health reasons. He lived alone, but had an extended family nearby who assisted him. His mother managed his money. Because the Father suffered from mental illness, the home study did not recommend placing the Child with the Father. After the Department obtained and reviewed the psychological records of the Father, the Department petitioned to terminate the parental rights of both parents. The mother was offered a case plan; the Father was not offered one.
The Father had been diagnosed in 2001 with psychosis and schizoaffective disorder. As early as 2003, he became connected to mental health outpatient treatment facilities which offered medication and therapy. The goal of the treatment plan was to control or eliminate symptoms of paranoia and delusions and to promote daily compliance with medication. Records regarding his mental health treatment over the years were introduced into evidence. Those records totaled approximately 257 pages. The final judgment notes the records are replete with references to the Father’s poor compliance with medication, poor or guarded prognosis, poor or limited insight and judgment, and various instances of active hallucinations and delusional behavior. The Father was hospitalized five times for mental health problems. As late as May 2006, he was unsure of his diagnosis, and in July 2009, it was reported that he had poor insight into his illness.
*1281 A psychological evaluation ordered as part of the termination proceedings confirmed the Father suffered from paranoid schizophrenia. It revealed the Father was fairly consistent with taking his medication in 2008, 2009, and the first two months of 2010. Then, he stopped all medication until May 2010, when he received medication by injection. The plan was to administer medication by injections because the Father would not consistently follow his medication regime. However, he failed to return for the injections. At the time of his court-appointed evaluation, he had not taken any medication for approximately five months and was responding to internal stimuli.
The court-appointed psychologist testified at trial that the Father did not fully understand his illness and the importance of his medication. He further opined that unless the Father was stabilized on medication, he would not be able to understand and come to terms with his illness. The expert testified the Father’s history of noncompliance with taking medication and attending treatment is one of the strongest predictors of whether he would be compliant in the future. He opined that the Father had a 33% chance of taking his medicine. The expert further expressed concern that the Father would not be able to meet a necessary predicate for achieving stability with his disorder because he failed to understand his illness. He testified that schizophrenia affects the Father’s ability to parent because his perceptions of reality can become distorted and inaccurate. If the person is hallucinating or having delusions, those distortions can cause him to harm his child.
Regarding proof that the child’s life, safety, or health would be threatened by a continued interaction with the parent regardless of the provision of services, the trial court found:
[The court appointed expert’s] testimony in conjunction with [the Father’s] medical records from South County show an eight (8) to ten (10) year history of unsuccessful attempts by various mental health professionals and case managers to get [the Father] to become medication compliant. This- Court must and does find that any further attempts would meet with the same futility.... As a result of [the Father’s] eight to ten year history of lack of medication compliance,- not recognizing the seriousness of his mental illness, poor insight and judgment, and poor prognosis, there is no reasonable basis to believe he will improve sufficiently to entrust this child to his exclusive care and control.
Those same findings led the trial court to find a nexus between the conduct of the Father and the prospective abuse, neglect, or harm to the Child if placed with the Father. They also led the trial court to find that because there is no reasonable basis to believe the Father will improve to the point of being able to appropriately care for the Child, termination of parental rights was the least restrictive alternative to protect the Child from harm.

Legal Analysis

Prospective Neglectful Conduct Will Harm the Child in the Future

Section 39.806(l)(c), Florida Statutes (2010), allows termination of parental rights:
When the parent or parents engaged in conduct toward the child or toward other children that demonstrates that the continuing involvement of the parent or parents in the parent-child relationship threatens the life, safety, well-being, or physical, mental, or emotional health of the child irrespective of the provision of services. Provision of services may be evidenced by proof that services were *1282 provided through a previous plan or offered as a case plan from a child welfare agency.
The Father contends the Department failed to prove that he engaged in conduct that demonstrates his continued involvement as a parent threatened the life, safety, well-being, or physical, mental, or emotional safety of the Child. In support of his argument, the Father cites M.H. v. Department of Children and Families, 866 So.2d 220 (Fla. 1st DCA 2004). The First District reversed termination of the mother’s parental rights because there was no evidence her drug addiction caused harm to the children. In that case, the mother had the foresight to place her children in a group home operated by a church while she sought inpatient drug treatment. Even though she relapsed twice during the year that the children were in the group home, the mother immediately sought further inpatient treatment without the necessity of referrals by others. The First District determined the evidence showed the mother had a strong desire to overcome her addiction.
The evidence in this case is not at all comparable to the evidence in M.H. In this case, the evidence clearly and convincingly proved the Father repeatedly failed to take medication and seek treatment. He sometimes would go months with no medication. Unlike M.H., the evidence in this case showed the Father did not understand his illness, and despite repeated efforts to make him understand the need for medication and therapy, the Father would not comply with his treatment plan.
The testimony of the court-appointed expert in this case clearly and convincingly proved the Child would be at risk if placed with and parented by the Father. The expert testified that when the Father is not on medication, he becomes delusional. At the time of his evaluation, the Father was responding to internal stimuli. He opined that based on prior history the Father has a 33% chance of complying with taking his medicine. He testified the Father’s schizophrenia affects his ability to parent because his perceptions of reality become distorted and inaccurate. When the Father is responding to internal stimuli and is unable to recognize what is happening, those distortions can cause him to harm the Child.
Before prospective abuse or neglect arises as a valid ground for termination, the evidence must show a parent’s past conduct or current mental condition makes the risk of future harm to the child likely. Hroncich v. Dep’t of Health & Rehabilitative Servs., 667 So.2d 804 (Fla. 5th DCA 1995). Moreover, there must be no reasonable basis to conclude that past behaviors will improve. Palmer v. Dep’t of Health & Rehabilitative Servs., 547 So.2d 981 (Fla. 5th DCA 1989). We are satisfied the trial court correctly determined the Department clearly and convincingly proved the Child would prospectively suffer abuse or neglect while in the care and control of the Father, and there is no reasonable basis to conclude the Father’s past noncompliance with treatment for schizophrenia will improve.
We recently issued an opinion in I.Z. v. B.H. and R.M., 53 So.3d 406 (Fla. 4th DCA 2011). Similar to this case, the mother suffered from mental illness. The child was placed in a permanent placement with the grandparents. The grandparents then sought to terminate the mother’s parental rights on three grounds, one of which was section 39.806(1)(c). In reference to that section, we said:
[T]he statute clearly provides that termination of one’s parental rights is warranted where the parent’s conduct toward the child or toward other children demonstrates a threat to the child’s well being. Evidence of a parent’s mental health issues, without evidence that *1283 those issues manifested themselves in behavior that poses a risk to the child’s well-being, is insufficient to justify termination of parental rights under this subsection.
Id. at 409. (Emphasis in original.) We denied the termination of parental rights because the only evidence which might have supported a finding that the mother’s conduct toward the child would be harmful was conduct during a visitation session prior to the permanent placement with the grandparents. We determined the trial court should have given minimal weight to such evidence. Unlike this case, the evidence was insufficient to prove that the parent’s mental illness was likely to pose a risk to the child in the future.[2] The emphasis given to the statutory language “toward the child or toward other children” was to make the point that for past conduct to be used to prove a future likelihood of significant harm as a basis for terminating parental rights, the focus must be whether the future conduct of the parent will be harmful to the child at issue. In the very next sentence we pointed out that evidence of mental health issues is insufficient to warrant termination of parental rights unless it results in “behavior that poses a risk to the child’s well-being.” Id.
This case has some similarity to the circumstances presented by In the Interest of J.L.P., 416 So.2d 1250 (Fla. 4th DCA 1982). In that case, the mother suffered from mental retardation. Similar to this case, the child was taken into shelter protection by the Department the day after he was born, and the child was never in the mother’s care. Also similar to this case, there was expert testimony that if the child were left alone with the mother, he would be subject to considerable risk of abuse because of the mother’s inability to think in terms of the child’s welfare. We see little difference in risk of harm to a child between a parent mentally unable to understand and appreciate the needs of a child and a parent who is experiencing a delusion and unable to appreciate the reality of a situation’s harm to a child. In J.L.P., the mother argued that her parental rights could not be terminated on a theory of prospective neglect because she never had custody of the child. In response to that argument, we wrote:
Our sympathy for the mother cannot blind us to the overriding concern for the welfare of the child. We cannot help the one and shall not harm the other. As the trial court pointedly observed in his final order, placing the boy with his mother will assure mistreatment. The Legislature clearly did not intend to have a child suffer such an experience before a trial court could act. Because of the clear and convincing evidence that neglect and abuse will occur if the child is placed in the care of his mother, we affirm [the termination of parental rights].
Id. at 1253.
Our case law and statutory law clearly recognizes that parental rights are subject *1284 to the overriding principle that it is the ultimate welfare and best interest of the child which must prevail. Caso v. Dep’t. of Health & Rehabilitative Servs., 569 So.2d 466, 468 (Fla. 3d DCA 1990); In Interest of J.A., 561 So.2d 356 (Fla. 3d DCA 1990); In Interest of M.J., 543 So.2d 1323, 1324 (Fla. 4th DCA 1989); In Interest of Baby Boy A, 544 So.2d 1136, 1137 (Fla. 4th DCA 1989). See also In Interest of J.L.P., 416 So.2d at 1252; 39.001(1)(b)l, Fla. Stat. (2011) (purpose of chapter 39 includes “[t]o preserve and strengthen the child’s family ties whenever possible, removing the child from parental custody when his or her welfare cannot be adequately safeguarded without such removal”). The evidence in this case clearly and convincingly shows it will not be safe to place the Child with the Father in the future.

No Case Plan for the Father

The Father also contends the trial court erred in terminating his parental rights without offering a case plan to allow him an opportunity to show he can parent the Child with the provision of services. In support of this argument, the Father relies on I.R. v. Department of Children and Families, 904 So.2d 583 (Fla. 3d DCA 2005). I.R. is factually very distinguishable from this case.
In I.R., the Third District reversed the termination of the mother’s parental rights because the evidence showed the mother was not offered a reasonable opportunity to complete the case plan offered to her by the Department. The Third District also determined that the case plan offered by the Department was based on an incorrect diagnosis of paranoid schizophrenia, when in fact the mother suffered from bipolar disorder. Thus, the provisions of services under the case plan did not appropriately address her mental health needs. The evidence also did not support the trial court’s finding that the mother was in denial that she was mentally ill. Initially the mother was in denial of her illness, which is a symptom of bipolar disorder. As a result of the court-ordered evaluation, she accepted her diagnosis and was amenable to treatment. The Third District also noted that the trial court made no reference in the final judgment to the testimony of the court-appointed expert. In that case, it was significant that the court-appointed expert opined that with appropriate treatment it was likely the mother would improve her parenting abilities and the risk of future neglect was not high. Finally, the Third District was persuaded by the fact that all of the mother’s allegedly neglectful conduct predated the order determining the child to be dependent. The mother did not engage in conduct that could be deemed neglectful after the child was removed.
Unlike I.R., in this case there is no issue of misdiagnosis. In the final judgment, the trial court relied heavily upon the testimony of the court-appointed expert. The court-appointed expert opined the Father did not appreciate the seriousness of his condition despite treatment for at least eight years. The expert also opined the risk of future neglect of the Child by the Father was high due to the Father’s inability to comply with his medication regime. Also, in this case the Father was engaging in neglectful conduct (failing to take medication and responding to internal stimuli) at the time of his court-ordered evaluation. Because it is so factually distinguishable, I.R. is neither controlling nor helpful to our analysis.
Our research reveals no cases in Florida in which a termination of parental rights under section 39.806(l)(c) was upheld and no case plan was offered to the parent. The Department cited no such cases. However, we found one case which discussed a situation where the Department *1285 sought termination under section 39.806(l)(c) and no case plan was offered to the parent. The case is from this district.
In W.R. v. Department of Children and Family Services, 896 So.2d 911 (Fla. 4th DCA 2005), similar to this case, the child, S.R., was sheltered with the Department the same day he was born. The trial court terminated W.R.’s parental rights after finding she did not successfully complete a case plan for her two older children and her parental rights were terminated as to those children. W.R. had been arrested at least twenty times and was out of jail a few weeks before S.R. was born. She faced new charges shortly after S.R. was born. As a result of the new offenses, one of which was strong arm robbery, W.R. was serving a four-year prison sentence at the time of the termination trial. The trial court also found no evidence that W.R. had addressed the mental health and substance abuse issues in the prior termination case. Also similar to this case, the Department sought termination of parental rights as to S.R. without offering W.R. a case plan.
In W.R., we noted that the evidence did not support some of the findings of the trial court. We also said that the record did not disclose or support the trial court’s finding that the mother would not be amenable to services. We determined there was no competent substantial evidence to rebut the mother’s testimony at trial that if she was offered a case plan she would do whatever was necessary to comply with the case plan. Based on the record in that case, we denied the termination of parental rights because the evidence did not show that termination was the least restrictive means of protecting S.R. Id. at 915-16.
In W.R., we discussed another case from this district, C.B. v. Department of Children Families, 874 So.2d 1246 (Fla. 4th DCA 2004), because it seemed factually similar. In C.B., the mother did not comply with a case plan offered for an older child and her parental rights were terminated as to that child. The mother also led a life of crime resulting in periods of incarceration. She was offered a case plan as to the second child, but the Department sought to terminate her parental rights as to the second child before she had an opportunity to complete the case plan. The trial court found the mother was not amenable to services even though she was attending parenting classes. We determined the finding that the mother was not amenable to services was based on speculation. We further determined the evidence did not support a finding that termination was the least restrictive alternative to protect the child.
Unlike W.R. and C.B., the evidence in this case clearly and convincingly established that the Father is not amenable to services. Despite years of mental health services designed to assist him with appreciating the seriousness of his condition and the need for medication, the court-ordered evaluation relied upon by the trial court revealed the Father had poor insight into his illness, was responding to internal stimuli, and had not taken any medication for five months prior to the evaluation. The evidence also showed this was a consistent pattern of behavior for over eight years and there was only a 33% chance that the Father would comply with taking medication in the future. Thus, the evidence that the Father was not amenable to services was not speculative.
In R.W.W. v. Department of Children and Families, 788 So.2d 1020 (Fla. 2d DCA 2001), the Second District stated:
[I]n order to terminate parental rights under section 39.806(l)(c), the trial court must find that the child’s life, safety, or health would be threatened by continued interaction with the parent regardless of *1286 any services provided to the parent. In essence, the trial court must find that any provision of services would be futile or that the child would be threatened with harm despite any services provided to the parent.
Id. (emphasis added). Citing R.W.W., the First District reversed a termination in N.L. v. Department of Children and Family Services, 843 So.2d 996, 997 (Fla. 1st DCA 2003), in part because there was “no evidence of the provision of services (or the futility of providing services) necessary for termination under subsection [39.806](l)(c) .... ” (emphasis added). The evidence in this case supports the trial court’s determination that the provision of any further services to the Father would be futile.
In M.A.P. v. Department of Children and Families, 739 So.2d 1287 (Fla. 5th DCA 1999), a mother suffering from drug addiction contended termination of her parental rights was inappropriate because the Department rendered insufficient assistance to allow her to succeed in her case plan. The evidence showed, throughout the dependency proceeding, the mother denied her need for drug treatment. In upholding the termination, the Fifth District observed, “The Department, however, cannot force the appellant to attend [drug treatment] meetings....” Id. at 1288. Although the Fifth District did not discuss the futility of services, it appears implicit the appellate court agreed with the trial court that the case plan was futile because the mother denied the need for treatment. In terms of futility, we see little difference between the situation where a parent denies the need for drug treatment and the situation where a parent cannot appreciate the need for treatment due to mental illness.
In this case, the evidence clearly and convincingly showed the Father was provided treatment services for mental illness by mental health agencies for approximately eight years. Those treatment services would have ameliorated conduct which would be harmful for parenting a child. As the court-ordered psychological evaluation showed and the trial court found, even after he received notice of the termination proceedings, the Father failed to follow the treatment plan. The fact that the Father was not a parent for seven of the eight years of the treatment plan and did not know he was in fact the biological father of the Child during the eighth year of his treatment plan does not alter our conclusion that the trial court did not err: irrespective of all the services he has received over the years, the provision of further services would have been futile, and it was not speculative for the trial court to conclude that the threat of harm to the child would continue despite the provision of services. We hold that under the facts of this case, the Department did not have to offer a case plan prior to terminating the Father’s parental rights under section 39.806(l)(c).
We also note there is no statutory obligation to offer a parent a case plan prior to termination of parental rights. Section 39.806(3) states that if a petition for termination of parental rights is filed under subsection (1), “the department need not offer the parents a case plan having a goal of reunification, but instead may file with the court a case plan having a goal of termination of parental rights.... ”

Least Restrictive Alternative

In A.W. v. Department of Children and Families, 969 So.2d 496 (Fla. 1st DCA 2007), the mother was developmentally disabled. The Department offered her a case plan, and the mother facially complied with it, including attending parenting classes. However, the evidence clearly showed that despite the provision of services, her men *1287 tal deficiencies prevented her from comprehending and implementing the parenting information provided to her. One of the grounds found by the trial court for terminating her parental rights was section 39.806(l)(c). On appeal, the mother contended, among other things, that termination of her parental rights is not the least restrictive means to protect the child from harm. In analyzing that issue, the First District said:
“Least restrictive means” analysis embodies due-process concerns. Before depriving someone of a fundamental right, such as the right to parent, the State must demonstrate a compelling interest and further such an interest through the least intrusive and restrictive means. [Citations omitted.] “This means that [the Department] ordinarily must show that it has made a good faith effort to rehabilitate the parent and reunite the family, such as through a current performance agreement or other such plan for the present child.”
A.W., 969 So.2d at 504 (quoting Padgett v. Dept. of Health Rehabilitative Servs., 577 So.2d 565, 571 (Fla.1991)). The First District determined that the Department made reasonable and good faith efforts to reunify the child with the mother by providing more than three years of services on how to parent a child; however, the provision of services was futile to protect the child from harm, so termination was the least restrictive alternative to provide that protection.
In this case, the Father had over eight years of services which would have ameliorated the conduct deemed harmful to the child. Even after receiving notice of the termination proceedings, he failed to benefit from the services offered and failed to follow his treatment program. If the provision of three years of services was futile and supported a finding that termination of parental rights as the least restrictive alternative in A.W., where the mother facially complied with her treatment plan, certainly the provision of services for over eight years to the Father, which proved to be futile, supports the conclusion that termination of parental rights is the least restrictive alternative to protect the Child from harm.
We affirm the termination of the Father’s parental rights.

Affirmed.

CIKLIN and GERBER, JJ., concur.

. The mother’s parental rights were terminated by constructive consent after she failed to appear at the adjudicatory hearing. No issue is raised on appeal about the termination of the mother's parental rights.

. We also note two other factual distinctions between I.Z. and this case. Neither the opinion nor the record identified the diagnosis of the mother’s mental illness. The record does not suggest she suffers from paranoid schizophrenia or becomes delusional as the Father in this case does. Also, the child in I.Z. was nine years old at the time of the termination trial. She testified that she is not afraid of her mother and wanted to continue to have a relationship with her. Although the record does not clearly show it, it may well be the child in I.Z. could cognitively understand her mother suffered from mental illness and would understand the need to seek help if she were in a compromised position while in her mother’s care. In this case, the Child was approximately two years old at the time of the termination hearing, and it is doubtful the Child had the cognitive skills to recognize his father suffers from mental illness.