DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**J.C.,** the mother,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES** and
**GUARDIAN AD LITEM PROGRAM,**
Appellees.

No. 4D18-2218

[February 13, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Yael Gamm, Judge; L.T. Case No. 2017-4147-CJ-DP.

Antony P. Ryan, Regional Counsel, and Richard G. Bartmon, Assistant Regional Counsel, Office of Criminal Conflict and Civil Regional Counsel, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee Department of Children and Families.

Thomasina Moore, Statewide Director of Appeals, Tallahassee, and Jesse R. Butler of Dickinson & Gibbons, P.A., Florida Statewide Guardian ad Litem Office, Defending Best Interests Project, Sarasota, for appellee Guardian ad Litem Program.

WARNER, J.

Appellant, J.C., appeals the trial court's final order terminating her parental rights as to her two children, J.L. and J.W. We agree with appellant that the trial court erred in terminating her rights based on section 39.806(1)(b), Florida Statutes (2017), and finding that she abandoned her children. However, we find that there was competent substantial evidence to support the trial court's alternative decision to terminate the mother's rights under section 39.806(1)(d)1., Florida Statutes (2017), because she will be incarcerated for a significant portion of her children's minorities, and termination will support the children's interests in permanency. Thus, we affirm the final order of termination

under section 39.806(1)(d)1., but we remand for the trial court to strike all findings of termination under section 39.806(1)(b).

In 2017, a shelter order was entered for the mother's two children. J.L. was seven years old, and J.W. was two. The order states that both of the children's fathers were incarcerated for some time, and the mother, along with the father of J.W., was incarcerated and awaiting trial for federal charges involving child sex trafficking.

In late 2017, the mother was found guilty of three federal charges involving sex trafficking of a minor. She was sentenced to concurrent sentences of 15.6 years for the first two counts, as well as a concurrent 120-month sentence for the third count. J.W.'s father was sentenced to 25 years for the same charges.

The Department of Children and Families never petitioned for an adjudication of dependency. Instead, DCF petitioned for an expedited termination of the mother's parental rights. It alleged two statutory grounds for termination. First, pursuant to section 39.806(1)(b), Florida Statutes (2017), it alleged abandonment as defined in section 39.01(1), in that the mother made no significant contribution to the children's care and maintenance, or failed to establish or maintain a substantial and positive relationship with the children. Second, under section 39.806(1)(d)1., Florida Statutes (2017), the mother was incarcerated, and her period of incarceration will constitute a significant portion of the children's minorities, in light of their ages and their need for a permanent and stable home. In the same petition, DCF moved to terminate the parental rights of J.W.'s father, alleging the same two grounds. It also noted that the legal father of J.L. was unknown, but the mother named a prospective father of the child.

In 2018, the trial court held an adjudicatory hearing. The prospective father of J.L. voluntarily surrendered his parental rights. The appellant mother appeared by telephone from federal prison and contested the petition for termination.

The assigned child advocate testified that the children were removed from the parents because they were in federal custody, and the children were placed with the maternal grandfather. The child advocate testified that the parents were not able to offer the children stable housing or income because of their incarceration, and the mother will be incarcerated for fifteen years. The children were doing well in their grandfather's home, although J.L. was receiving counseling to cope with the trauma that she experienced. The children were bonded with their caregiver, with whom

2

they had a parent-child relationship, and the caregiver was willing to adopt them. The child advocate recommended termination and adoption because the parents will miss the majority of the children's minority years, and termination would help the children achieve permanency. However, during cross-examination, the child advocate admitted that she has never spoken to the mother or witnessed the mother interact with the children. She knew very little about the mother's relationship with her children, but she testified that the children had phone contact with the mother.

The guardian ad litem also recommended termination and adoption. The children were happy in their placement, and the caregivers were willing to adopt the children. The parents could not provide for their children because of their incarceration, and the children would not suffer harm upon termination. Nevertheless, the GAL did not have any concerns regarding the mother other than her criminal case. The mother did communicate with her children over the phone.

The mother testified that her appeal in her federal criminal case is pending. She raised her children since they were born. She speaks to her children about three to four times a week over the phone, and she mails "math work" to J.L. to help her with her homework. When she was incarcerated in Miami, her mother would bring her children to visit her every week. Her son calls her "mommy." Furthermore, she testified that her father did not want to adopt the children, but he would do so to prevent them from being placed with a random family. However, she now is incarcerated in Tallahassee for fifteen years.

The court entered an order terminating the parental rights of the mother and the father based on the above two statutory grounds. The court found that termination was in the children's manifest best interests because they were in a loving home with their maternal grandparents who intended to adopt them, and the parents were unable to provide for their children's basic needs due to their incarceration. The children have a strong bond with their caregivers, and termination was the least restrictive means of protecting them from harm. The mother now appeals.

To terminate a parent's rights, the State must: 1) prove a statutory ground for termination under section 39.806; 2) show that termination is in the child's manifest best interests; and 3) prove that termination is the least restrictive means to protect the child from serious harm. *B.K. v. Dep't of Children & Families*, 166 So. 3d 866, 872-73 (Fla. 4th DCA 2015). The State must present clear and convincing evidence of each element, and an appellate court will not reverse a final order terminating parental rights unless it is clearly erroneous or lacking in evidentiary support. *Id.* at 873.

3

Furthermore, as long as one of the statutory grounds for termination is supported by competent substantial evidence, this Court will affirm the termination order.  *M.D. v. Dep't of Children & Families*, 187 So. 3d 1275, 1277 (Fla. 4th DCA 2016).

The mother argues that competent substantial evidence did not support termination under section 39.806(1)(b) for abandonment, and we agree.  A court may terminate parental rights under section 39.806(1)(b), Florida Statutes (2017), if there is "[a]bandonment as defined in s. 39.01(1)."  Under section 39.01(1), Florida Statutes (2017), abandonment occurs when a parent:

> while being able, has made no significant contribution to the child's care and maintenance *or* has failed to establish or maintain a substantial and positive relationship with the child, *or both.*  For purposes of this subsection, "establish or maintain a substantial and positive relationship" includes, but is not limited to, frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the child, and the exercise of parental rights and responsibilities.  Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child. . . .  The incarceration, repeated incarceration, or extended incarceration of a parent, legal custodian, or caregiver responsible for a child's welfare may support a finding of abandonment.

(emphasis added).  A finding of abandonment can be made based upon a parent's failure to support the child if the parent is able to do so or a parent's failure to maintain a substantial and positive relationship with the child, or both.

In its termination order, the court noted that the mother called her children three to four times per week while she was incarcerated, showing a relationship between the mother and child.  *Compare with M.D. v. Dep't of Children & Families*, 187 So. 3d 1275, 1278 (Fla. 4th DCA 2016) (finding sufficient evidence that the incarcerated father abandoned his child where he barely communicated with the child).  Thus, the court's finding of abandonment was based solely on the parent's incarceration and inability to support the children.  However, there was no evidence that, *while being able*, the mother failed to support her children.  In fact, there was no evidence that she had any ability to financially support her children while she was incarcerated.  While incarceration may be a factor to consider in

4

determining whether the parent has abandoned the child, incarceration itself does not constitute abandonment as a matter of law. *See In re B.W.*, 498 So. 2d 946, 947-48 (Fla. 1986) (noting "indigency resulting in an inability to provide support does not constitute abandonment," even when the parent is incarcerated). Because abandonment was based solely on the mother's incarceration and inability to provide for her children, we find that the court erred by terminating her rights on this ground. *See B.F. v. Dep't of Children & Families*, 237 So. 3d 390, 393 (Fla. 4th DCA 2018) (holding that there was insufficient evidence that the incarcerated father abandoned his child where there was minimal evidence that he was able to significantly contribute to his child's care, and there was evidence that the father communicated with the child over the phone).

We must affirm the termination order, however, as there was competent substantial evidence to terminate the mother's parental rights under section 39.806(1)(d)1., Florida Statutes (2017). Under this subsection, a court may terminate an incarcerated parent's parental rights if:

> The period of time for which the parent is expected to be incarcerated will constitute a significant portion of the child's minority. When determining whether the period of time is significant, the court shall consider the child's age and the child's need for a permanent and stable home. The period of time begins on the date that the parent enters into incarceration[.]

§ 39.806(1)(d)1., Fla. Stat. In *D.S. v. Department of Children and Families*, 164 So. 3d 29, 34 (Fla. 4th DCA 2015), we explained that "the court must look both at the length of the incarceration as well as its effect on the child's need for permanency. In other words, the statute requires both a quantitative and qualitative dimension to the inquiry." The mother argues that the trial court considered only the length of her sentence, rather than whether her incarceration would harm the children's interests in permanency. We disagree as the court evaluated both the length and effect of the incarceration.

There was competent substantial evidence that the mother's period of incarceration would constitute not just a significant portion of her children's minorities but all of it. She is expected to be released in fifteen years. At that time, her eldest child will be in her twenties, and her youngest child will be just shy of eighteen years old. In its order, the court considered the children's relationship with both their mother and their grandparents, and it found that termination would allow the children to enter a more stable, permanent family relationship with their

grandparents, who intended to adopt them. Under its least restrictive means analysis, the court noted that the children's interests in permanency were "paramount" to the mother's "desire to wait out" her criminal appeal. Notably, the court found that the children's relationships with their parents and other relatives were likely to continue in their current placement. The court's findings and rulings were supported by competent substantial evidence.

For the foregoing reasons, we affirm the termination of J.C.'s parental rights under section 39.806(1)(d)1., but we remand for court to strike all findings of termination based on section 39.806(1)(b).

CIKLIN and LEVINE, JJ., concur.

*　　*　　*

***Not final until disposition of timely filed motion for rehearing.***