DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**R.L., the Father,**
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES**
and **GUARDIAN AD LITEM PROGRAM,**
Appellees.

No. 4D18-3700

[May 22, 2019]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Yael Gamm, Judge; L.T. Case No. 2015-2645-CJ-DP.

Kevin G. Thomas, Sunny Isles Beach, for appellant.

Ashley B. Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee Department of Children and Families.

Vincent Trimarco of Musca Law, Tampa, and Thomasina F. Moore, Statewide Director of Appeals, and Laura J. Lee, Appellate Counsel, Guardian ad Litem Program, Tallahassee, for appellee Guardian ad Litem Program.

FORST, J.

The father appeals the termination of his parental rights with respect to his three-year-old son, J.L. He challenges the trial court's order on three grounds. We agree with the father that the trial court's determination that he caused "serious bodily injury" to another child is not supported by competent substantial evidence. We affirm the termination order, however, as there is competent substantial evidence to support the trial court's finding that the father had, essentially, abandoned J.L. We also affirm the trial court's finding that termination of the father's parental rights is the least restrictive means of protecting the child from serious harm.

**Background**

J.L. was declared dependent by the Department of Children and Families ("the Department") after being born substance exposed. He was reunited with his parents for five weeks before the mother was arrested for domestic battery on the father. The battery occurred after the mother found love letters to the father from his fourteen-year-old female tenant. After the mother's arrest, J.L.—age one-and-a-half at the time—lived with the father for seven weeks, until the father's arrest for his alleged sexual conduct with the fourteen-year-old tenant.

The father pled nolo contendere to aggravated battery and was incarcerated; however, the criminal court determined that no restitution was necessary, finding "no victim sustained any injury or monetary loss." The trial court in the present case nonetheless inferred from the criminal court's judgment that the father had caused serious bodily injury to the alleged victim in that case.

A few months into the father's incarceration, a child advocate informed him that it was important to communicate at least monthly with ChildNet to facilitate continued contact with his son, providing him with ChildNet's address to effectuate supervised written correspondence with J.L. The father replied the following day with questions regarding his case plan. The father also enclosed a letter to J.L., which was to be the only letter he sent to J.L. while the father was incarcerated. During the father's prison term, the child was reunited with the mother. The mother brought J.L. to the prison once for a visit and supervised a few calls between father and son. J.L. lived with the mother for ten months before she suffered a drug relapse. After one failed placement, J.L. was placed with foster parents, with whom he has remained. The Department then petitioned to terminate both the mother's and father's parental rights.

At the termination hearing, a year later, the father testified that he wanted custody of J.L., but that J.L. should live with the mother, and the father would move close to them after his release from prison, which was scheduled to occur several months after the hearing. The trial court found that, while the father had completed his case plan goals to the extent he was able to do so in prison, he had sent only the one letter to J.L. via ChildNet, and his supervised calls with J.L. had ceased over a year before the hearing. Consequently, the father had not been in contact with J.L. for over a year.

The trial court further found that the father knew how to communicate with J.L. and had been informed regarding organizations that would send cards and gifts to the child on his behalf, but he failed to take advantage

of the opportunity to communicate. The court additionally determined that, although the father received $50 a month while incarcerated, he failed to send any money to J.L.[1] The father could not testify to any details of J.L.'s life following the father's imprisonment, and the trial court determined there had been no observable bond between the father and J.L. since the father's arrest. The court thus concluded the father had abandoned J.L., and that termination was in J.L.'s manifest best interests and the least restrictive means of protecting him from serious harm.[2]

## Analysis

> To terminate a parent's rights, the State must: 1) prove a statutory ground for termination under section 39.806[, Florida Statutes (2018)]; 2) show that termination is in the child's manifest best interests; and 3) prove that termination is the least restrictive means to protect the child from serious harm. *B.K. v. Dep't of Children & Families*, 166 So. 3d 866, 872-73 (Fla. 4th DCA 2015). The State must present clear and convincing evidence of each element, and an appellate court will not reverse a final order terminating parental rights unless it is clearly erroneous or lacking in evidentiary support. *Id.* at 873.

*J.C. v. Dep't of Children & Families*, 264 So. 3d 973, 977 (Fla. 4th DCA 2019). Abandonment and felony battery resulting in serious bodily injury to a child are statutory grounds for termination. § 39.806(1)(b), (h), Fla. Stat. (2018). "[S]o long as the trial court's ruling on one of the statutory grounds set forth in section 39.806, Florida Statutes, is supported by the evidence, the court's decision [to terminate parental rights] is affirmable." *M.D. v. Dep't of Children & Families*, 187 So. 3d 1275, 1277 (Fla. 4th DCA 2016).

Abandonment occurs when a parent, "while being able, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both." § 39.01(1), Fla. Stat. (2018). Conduct leading to

---

[1] The trial court's factual findings reflect that the father earned $50 a month, in accordance with the father's testimony. However, the court's legal findings reflect that the father earned $50 a week. We find the discrepancy to be harmless as there is no evidence that the father sent *any* funds to the child during the duration of his incarceration.

[2] The mother's parental rights were also terminated. She has not appealed from the termination order.

incarceration is a consideration but cannot be the sole basis for a finding of abandonment. *B.F. v. Dep't of Children & Families*, 237 So. 3d 390, 393 (Fla. 4th DCA 2018). Further, "[t]he parent's efforts, or lack thereof, to assume parental duties while incarcerated must be considered in light of the limited opportunities to assume those duties while in prison." *Id.* (quoting *In re T.H.*, 979 So. 2d 1075, 1080 (Fla. 2d DCA 2008)).

Our opinion in *M.D. v. Department of Children & Families*, 187 So. 3d 1275 (Fla. 4th DCA 2016) is on point. There, a father was found to have abandoned his child after having little involvement with the child in the six months prior to his two-year incarceration during which he sent only two letters. *Id.* at 1278. In contrast, in *B.F.*, we reversed a termination where the incarcerated father frequently communicated with the child telephonically, and the child recognized him as his father. 237 So. 3d at 393. In the case at hand, as the trial court found, the father "did not bother to make bonafide efforts to maintain a relationship with his child from the moment it ceased to be as convenient as simply picking up the phone to [call the mother] to speak with [the child] or ask about his well-being." The finding of abandonment is supported by competent substantial evidence.

We also agree with the trial court that termination is the least restrictive means to protect the child from serious harm. Under section 39.806(2), Florida Statutes (2018), reasonable efforts to preserve and reunify families are not required when termination is proven under sections 39.806(1)(b) through (d) or (1)(f) through (m). As discussed, termination here was premised and proven under section 39.806(1)(b); therefore, the Department is not required to offer additional services to allow the father an opportunity to keep his parental rights intact. Furthermore, while the father may want some relationship with J.L.—on his own terms—the trial court was not required to preserve the "parental bond at the cost of [the] child's future" with his foster parents, who intend to adopt him. *S.M. v. Fla. Dep't of Children & Families*, 202 So. 3d 769, 778 (Fla. 2016) (citation omitted); *see also B.K.*, 166 So. 3d at 877 ("[I]f the focus is on the child, and not the parent, where the child has bonded with her caregivers, termination of parental rights is the least restrictive means of protecting the child from the harm of continued instability in her life.").

As to the ground for termination based on the commission of a felony battery that resulted in serious bodily injury to a child, the father pled nolo contendere to aggravated battery, the elements of which include causing great bodily harm *or* using a deadly weapon *or* knowingly battering a pregnant person. § 784.045, Fla. Stat. (2016). Because the trial court had heard nothing about the use of a deadly weapon or the victim being

pregnant, it inferred a finding of great bodily harm to the fourteen-year-old victim.  This finding lacks evidentiary support.  The evidence was that the mother discovered love letters from the father's fourteen-year-old tenant; the father was arrested for sexual battery seven weeks later; he pled *nolo contendere* to aggravated battery; and the restitution order stated that "no victim sustained any injury."  Thus, a holding that the father had committed a felony battery that resulted in serious bodily injury does not follow from this evidence, and the order must therefore be corrected.

## Conclusion

We affirm the trial court's finding of abandonment and that termination is the least restrictive means to protect the child from serious harm.  We remand, however, "for [the] court to strike all findings of termination" based on section 39.806(1)(h).  *J.C.*, 264 So. 3d at 978.

*Affirmed in part; Remanded in part.*

WARNER and KUNTZ, JJ. concur.

\*        \*        \*

***Not final until disposition of timely filed motion for rehearing.***

5