DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**C.P.,** the father,
Appellant,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES** and **GUARDIAN AD LITEM,**
Appellees.

No. 4D21-465

[July 14, 2021]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Yael Gamm, Judge; L.T. Case No. 2018-1291 DP.

Denise E. Kistner of Law Offices of Denise E. Kistner, P.A., Fort Lauderdale, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Carolyn Schwarz, Assistant Attorney General, Children's Legal Services, Fort Lauderdale, for appellee Department of Children and Families.

Thomasina F. Moore, Statewide Director of Appeals, Rebecca L. Bartlett, Senior Attorney, Appellate Division, Statewide Guardian ad Litem Office, Tallahassee, for appellee Guardian ad Litem.

KLINGENSMITH, J.

C.P. ("the father") appeals the trial court's final judgment terminating his parental rights to his two minor children.[1] The trial court found grounds to terminate the father's parental rights to one child, C.F.P., under sections 39.806(1)(b) (abandonment); 39.806(1)(c) (continuing involvement threatens child's well-being irrespective of services); and 39.806(1)(e)1. (failure to substantially comply with case plan), Florida Statutes (2020). As to the other child, C.Y.P., the trial court only found grounds to terminate the father's parental rights under section

---

[1] The mother's appeal of the final judgment terminating her parental rights to these two minor children was affirmed per curiam by this court. *See A.W. v. Guardian Ad Litem*, 4D21-38, 2021 WL 2105428 (Fla. 4th DCA May 25, 2021).

39.806(1)(b). For the reasons set forth below, we affirm the judgment terminating the father's parental rights as to both children on the grounds of abandonment under section 39.806(1)(b), but reverse the findings as to C.F.P. based on sections 39.806(1)(c) and 39.806(1)(e)1.

"While a trial court's decision to terminate parental rights must be based upon clear and convincing evidence, [appellate] review is limited to whether competent substantial evidence supports the trial court's judgment." *M.D. v. State, Dep't of Children & Families*, 187 So. 3d 1275, 1277 (Fla. 4th DCA 2016) (quoting *J.G. v. Dep't of Children & Families*, 22 So. 3d 774, 775 (Fla. 4th DCA 2009)). "A trial court's finding of clear and convincing evidence is reversible only if clearly erroneous or lacking in evidentiary support." *S.S. v. D.L.*, 944 So. 2d 553, 557 (Fla. 4th DCA 2007).

The State may terminate parental rights if a parent "abandon[s]" their child. *See* § 39.806(1)(b), Fla. Stat. (2020). Under the relevant statute, "abandonment" means that the parent or caregiver, "while being able, has made no significant contribution to the child's care and maintenance or has failed to establish or maintain a substantial and positive relationship with the child, or both." § 39.01(1), Fla. Stat. (2020). To "establish or maintain a substantial and positive relationship with the child" a parent must make "frequent and regular contact with the child through frequent and regular visitation or frequent and regular communication to or with the child" and must "exercise [their] parental rights and responsibilities." *Id.* "Marginal efforts and incidental or token visits or communications are not sufficient to establish or maintain a substantial and positive relationship with a child." *Id.*

In this case, the father has been incarcerated since June 2018 after he was arrested on a drug charge and is serving a five-year sentence which would last through 2023 (although he testified that he expected to be released in June 2021). Under section 39.01(1), "[t]he qualifying phrase 'while being able' excludes involuntary abandonment." *B.F. v. State, Dep't of Children & Families*, 237 So. 3d 390, 393 (Fla. 4th DCA 2018) (quoting *T.S. ex rel. D.H. v. Dep't of Children & Families*, 969 So. 2d 494, 496 (Fla. 1st DCA 2007)). "Although a parent's incarceration can be a factor the court considers for terminating parental rights based on abandonment, incarceration alone is insufficient." *Id.* (quoting *T.S.*, 969 So. 2d at 496). "[T]he parent's efforts, or lack thereof, to assume parental duties while incarcerated must be considered in light of the limited opportunities to assume those duties while in prison." *Id.* (quoting *In re T.H.*, 979 So. 2d 1075, 1080 (Fla. 2d DCA 2008)).

The evidence showed that prior to the father's incarceration, he was not very involved in caring for C.Y.P. When the Department of Children and Families ("DCF") filed shelter and dependency petitions against the mother in April 2018, the father did not request custody of C.Y.P., who was eight months old at the time. From the date DCF filed the petitions against the mother to the date of the father's arrest two months later, the father did not visit or speak to C.Y.P. After the father was incarcerated and C.F.P. was born in September 2018, there was testimony that he still did not make efforts to communicate directly with the children. Although the father frequently inquired how the children were, he did not send letters to the children through their advocate, and he did not call them through their advocate or via the prison phone. After he was incarcerated, the only time the father had contact with the children, in-person or otherwise, was when the children's foster parents brought them to visit him in prison a year after his incarceration. Accordingly, competent, substantial evidence supports the termination of the father's parental rights to both children under section 39.806(1)(b) for abandonment.

The father argues that the lack of relationship between him and the children was due to his incarceration, the children's age, and DCF's lack of efforts to assist him in maintaining contact with the children. However, the evidence showed that DCF provided opportunities for the father to maintain contact with the children, but he failed to take advantage of them. He could have asked the advocate to send letters to the children on his behalf or to facilitate a call with them, but he did not. *See M.D.*, 187 So. 3d at 1277 (finding of abandonment despite father sending two letters to his daughter during the two years he was incarcerated was supported by competent, substantial evidence). The fact that the children were too young to read the letters did not negate the father's duty to send them if that was his only means of maintaining his relationship with them while he was in prison. *See B.F.*, 237 So. 3d at 393 (finding that the father was able to maintain a relationship with his two-year-old son while he was incarcerated); *T.C.S. v. State, Dep't of Health & Rehab. Servs. (In re G.R.S.)*, 647 So. 2d 1025, 1028 (Fla. 4th DCA 1994) (finding the father made attempts to maintain two-way communication between himself and his thirteen-month-old child by communicating through the child's custodians).

The father also argues that his completion of parenting counseling, individual counseling, and a substance abuse program should have been considered before his rights were terminated. While it was laudable that the father completed these programs, they did not negate his duty to maintain contact with the children. *See R.L. v. Dep't of Children & Families*, 273 So. 3d 1012, 1014 (Fla. 4th DCA 2019) ("[W]hile the father

3

had completed his case plan goals to the extent he was able to do so in prison, he had sent only the one letter to J.L.").

Although DCF successfully proved abandonment under section 39.806(1)(b), it did not prove that termination of the father's parental rights as to C.F.P. was warranted under section 39.806(1)(c). The record does not reveal competent, substantial evidence supporting DCF's allegation that continuing the parent-child relationship threatened the child's well-being irrespective of services. To terminate parental rights on that ground, "the evidence must show a parent's past conduct or current mental condition makes the risk of future harm to the child likely." *D.B. v. Dep't of Children & Families*, 87 So. 3d 1279, 1282 (Fla. 4th DCA 2012). Additionally, "there must be no reasonable basis to conclude that past behaviors will improve." *Id.* There was little evidence of the father's past conduct towards C.F.P. as he has been incarcerated for almost all of C.F.P.'s life. The only evidence that DCF presented regarding the father's conduct towards C.F.P. was his failure to maintain contact with him. Even if the father's past conduct met the standard for termination, DCF "failed to specify why it felt the father was not amenable to services." *T.M. v. Dep't of Children & Families*, 905 So. 2d 993, 997 (Fla. 4th DCA 2005). In fact, the evidence showed that the father was amenable to services. He completed his required individual counseling and parenting counseling and a voluntary substance abuse program while he was in jail. Because he completed these programs after the detrimental past conduct occurred, there is a reasonable basis to conclude that his conduct may improve. *See D.B.*, 87 So. 3d at 1282 (stating that to terminate parental rights under this ground "there must be no reasonable basis to conclude that past behaviors will improve").

Additionally, DCF did not prove termination of the father's rights to C.F.P. was warranted under section 39.806(1)(e)1., because the record did not show that the father failed to substantially comply with the case plan. "'Substantial compliance' means that the circumstances which caused the creation of the case plan have been significantly remedied to the extent that the well-being and safety of the child will not be endangered upon the child's remaining with or being returned to the child's parent." § 39.01(84), Fla. Stat. (2020). "Where a court is terminating parental rights based on a parent's failure to comply with a case plan or a performance agreement, it is axiomatic that the parent must have the substantial ability to comply with the plan or agreement." *In re G.M., Jr.*, 71 So. 3d 924, 926 (Fla. 2d DCA 2011). When a parent is incarcerated, they typically do not have the ability to comply with many aspects of a case plan. *See id.* (stating that the father "did not have the ability to comply with his case [plan] because of his incarceration and the Department's failure to assist

him"). Here, the father completed all the case plan tasks that he could while he was in jail: individual counseling and parenting counseling. He even completed a voluntary substance abuse program. However, the father did not have the ability to provide proof of stable housing and stable income. *See In re G.M., Jr.,* 71 So. 3d at 926; *In Interest of E.L.H., Jr.,* 687 So. 2d 924, 925 (Fla. 2d DCA 1997); *see also In re R.S.,* 48 So. 3d 1035, 1036 (Fla. 2d DCA 2010) (noting that the father was incarcerated and could not complete the stable housing and stable income tasks in his case plan). It is also unclear whether the father had the ability to provide the child support envisioned under his case plan due to his "limited opportunities" to earn money while in jail. *See B.F.,* 237 So. 3d at 393.

We reverse the portion of the order terminating the father's parental rights as to C.F.P. under sections 39.806(1)(c) and 39.806(1)(e)1. We remand for those grounds and findings that are inconsistent with this opinion to be stricken from the final judgment. However, we affirm the termination of the father's parental rights as to both children under section 39.806(1)(b). We also affirm the findings that termination of the father's parental rights was in the "manifest best interests of the children," and that termination was the least restrictive means to protect the children from serious harm since the father did not contest the trial court's findings on these issues. *See E.T. v. Dep't of Children & Families,* 261 So. 3d 593, 598 (Fla. 4th DCA 2019) (failure to challenge certain grounds for termination in an initial brief constitutes waiver of those grounds).

*Affirmed in part, reversed in part, and remanded.*

KUNTZ and ARTAU, JJ., concur.

* * *

**Not final until disposition of timely filed motion for rehearing.**

5